**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Antonio AYALA and Gilbert Lopez,
Defendants-Appellants.**

No. 79–5591.

United States Court of Appeals,
Fifth Circuit.
Unit A

April 20, 1981.

---

Roy R. Barrera, Rand J. Riklin, San Antonio, Tex., for Ayala.

Gilbert Lopez, pro se.

LeRoy Morgan Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

* District Judge of the Western District of Texas, sitting by designation.

Before RUBIN and GARZA, Circuit Judges, and SUTTLE *, District Judge.

ALVIN B. RUBIN, Circuit Judge:

Once again we seek to locate midway the fulcrum between the government's protective shield over an informer's identity and the aid that the informer's testimony might provide the defense. As our repeated consideration of the problem demonstrates, we have been unable to provide a notch that would make the point easy for litigants and trial courts to discover. Reviewing the conscientious effort of a trial judge, we reach a different conclusion, not because he was wrong or we are right, but because, in discharge of our appellate task, no less and no more scrupulously than he in performing his trial task, we view the ultimate balance differently.

Antonio Ayala and Gilbert Lopez were each convicted of possession of heroin with the intent to distribute it and of a conspiracy to that end. Each challenges the sufficiency of the evidence to support the convictions and raises several trial errors. In addition, they contend that the trial court erred by refusing to compel the government to disclose the identity of a confidential informant who had participated in the criminal activity. Finding that Ayala was prejudiced by the government's refusal to disclose the informant's identity, we reverse his conviction. We conclude, however, that Lopez was not prejudiced by the failure to disclose and, finding no merit in his other assertions of error, we affirm the jury verdict.

The convictions were based on a sale of heroin to a Drug Enforcement Administration (DEA) agent and the activities and negotiations that preceded that sale. The undercover agent first met with Lopez on March 2, 1979. An unidentified female informant was present at this and all subsequent meetings that took place between

Lopez and the agent. Over the course of the next six days, the three individuals met on several occasions. Lopez informed the agent that the heroin would be secured from his "source." The process of obtaining the heroin involved several phone calls from Lopez to the unidentified person. Lopez reported to the agent that he had visited this person's home on two occasions in an effort to arrange the transaction. Finally, Lopez told the agent that the person who was the source would jog into a school playground, where the transaction would take place.

Lopez, the informant and the DEA agent arrived at the playground by automobile and waited until 11:30 p. m. when Lopez spotted a jogger. Lopez left the others and approached the jogger. The jogger handed Lopez a package which was later found to contain heroin. Lopez, in turn, delivered the package to the DEA agent. As soon as the delivery was complete, the informant opened the automobile's trunk as a signal to the authorities to arrest the participants. Lopez was apprehended at the scene, but the jogger was not found. Subsequently, Ayala was arrested. The government charges that Ayala was the jogger and the source of the heroin.

## I.

Prior to trial, both Lopez and Ayala moved to compel the government to disclose the identity of the informant. Although she had been present at the meetings, Lopez knew her only by sight and by first name. The district court, before ruling on the motion, conducted an *in camera* interview with the informant. The district judge found that the informant "could not positively identify Ayala" but that she had given "a reasonably accurate description of" him and concluded that there was no indication that the informant "possessed any evidence that would tend to exonerate either defendant." Therefore, the district court denied the motion.

In *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court explained that the government's privilege of withholding an informer's identity exists to further and to protect the public interest in law enforcement. By preserving the anonymity of informers, the privilege encourages individuals to perform their obligation to communicate with law enforcement officials. The Court stressed, however, that the privilege is not absolute and identified three exceptions. The third exception, arising from the "fundamental requirements of fairness," requires disclosure of the informant's identity "where the disclosure . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Id.* at 61–62, 77 S.Ct. at 628, 1 L.Ed.2d at 645.

The Court refused to articulate a fixed rule regarding disclosure. Instead, it stated that the inquiry requires balancing the public interest in protecting the flow of information against the accused's right to prepare a defense. "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62, 77 S.Ct. at 629, 1 L.Ed.2d at 646.

Since *Roviaro*, this circuit has refined the description of the factors to be weighed. The informer's level of involvement with the criminal activity is an important consideration. *Suarez v. United States*, 582 F.2d 1007, 1011 (5th Cir. 1978); *Alvarez v. United States*, 525 F.2d 980, 982 (5th Cir.), *cert. denied*, 425 U.S. 995, 96 S.Ct. 2209, 48 L.Ed.2d 820 (1976). The more active the participation, the greater the need for identification. *United States v. Gonzales*, 606 F.2d 70 (5th Cir. 1979).

In the present case, the female informer was not an integral member of the criminal activity involved, but neither was she merely a passive observer. *Cf. Suarez v. United States*, 582 F.2d 1007 (5th Cir. 1978) (informant was a mere "tipster"). She arranged the initial meeting between Lopez and the DEA agent, acted as an intermediary relaying messages between Lopez and the agent and was responsible for retrieving the money at the time of the sale. She was also present at each meeting that took place between the participants. *Cf. United*

*States v. Toombs,* 497 F.2d 88, 93 (5th Cir. 1974) ("Nor was the informant an active participant in setting the stage in creating the atmosphere of confidence beforehand and continuing it by his close presence during the moments of critical conversation").

██ The second factor is the helpfulness of disclosure to the defense. We have required more than conjecture or supposition about the importance of the informer's testimony. A close relationship between the asserted defense and the informer's likely testimony favors disclosure. *United States v. Gonzales,* 606 F.2d 70 (5th Cir. 1979). *See also United States v. Hare,* 589 F.2d 242 (5th Cir. 1979). Ayala has made a specific claim concerning the necessity of the informer's testimony to his defense. His primary defense was that he was not the jogger who had met Lopez in the playground and was not involved in the conspiracy. In support of this theory, he produced two alibi witnesses. The prosecution's primary evidence placing Ayala at the scene of the transaction was the DEA agent's courtroom identification of him.

██ Ayala contends that the testimony of the informer, who allegedly had a closer view of the jogger than the agent, would be directly relevant to proving he was not the jogger and would cast doubt on the agent's identification. Ayala's contention, therefore, rises above pure conjecture. He has made a sufficiently specific demonstration of the relevancy and potential helpfulness of the informer's testimony. *Cf. Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) (The informer, as the sole participant other than the defendant, was the only person able to corroborate the defendant's version of the events or contradict the government's theory). The trial judge properly took her testimony in chambers. *See United States v. Fischer,* 531 F.2d 783, 788 (5th Cir. 1976). We are aided in our conclusion by this evidence. Although the *in camera* transcript does not enable us to forecast the details of her testimony, it indicates that her evidence might be useful to the defendant, whose identification at the trial was made only by the DEA agent. Lopez, on the other hand, has not indicated in any way how the in-

former's testimony would have aided his defense. His participation in the transaction was uncontroverted and we can discern no information that the informer possessed that would tend even remotely to exonerate Lopez.

Counterbalancing these two factors is the government's interest in nondisclosure. The magnitude of that interest is often proved by demonstrating that the informer might be endangered if her identity were revealed. *See e. g. United States v. Toombs,* 497 F.2d 88, 94 (5th Cir. 1974) (the informer was genuinely concerned that his confidentiality be maintained and he "had been shot three times after the incident in question.") An informant's past or future usefulness to the authorities as a confidential source also tends to offset advantages to the accused to be derived from disclosure. *Id.* We have examined the transcript of the *in camera* interview conducted by the district court and it contains no evidence that would indicate that disclosure of the informer's identity would either impair her usefulness or endanger her safety. Furthermore, the government has voiced to this court only general concerns for the free flow of information, and has articulated no other reason for cloaking the informer. *Roviaro* plainly requires more than such a general allegation.

Weighing the involvement of the informer in the criminal activity, the specific articulation of the manner in which her testimony could aid Ayala's defense and the absence of countervailing governmental concerns, we reverse Ayala's conviction. If he is retried, the government must disclose to the defense the informer's identity. Otherwise, the action must be dismissed. *See Roviaro v. United States,* 353 U.S. 60, 61, 77 S.Ct. 627, 628, 1 L.Ed.2d 644, 645 (1957). Because of the absence of a sufficiently specific contention of the relevancy and helpfulness of the testimony to Lopez's defense, however, we cannot reverse his conviction. Therefore, we turn to the other assertions of error urged by Lopez.

## II.

Lopez raises four additional issues: sufficiency of the evidence to support the con-

spiracy conviction, the impropriety of allowing one judge to conduct the pretrial *in camera* hearing and another to preside at trial, the necessity of reversing his conspiracy conviction if Ayala's does not stand and the propriety of the special parole term imposed as a result of the conspiracy conviction.

■ The crucial element of a drug conspiracy under 21 U.S.C. § 846 is an agreement by two or more persons to commit a narcotics offense. *See, e. g., United States v. Beasley*, 519 F.2d 233 (5th Cir. 1975), *vacated and remanded on other grounds*, 425 U.S. 956, 96 S.Ct. 1736, 48 L.Ed.2d 201 (1976); *United States v. Bermudez*, 526 F.2d 89, 94 (2d Cir. 1975); *United States v. Thomas*, 567 F.2d 638, 641 (5th Cir.), *cert. denied sub nom., Oliveti v. United States*, 439 U.S. 822, 99 S.Ct. 90, 58 L.Ed.2d 114 (1978). The existence of such an agreement may be proved by either direct or circumstantial evidence. The very nature of conspiracy frequently requires that the existence of an agreement be proved by inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme. *United States v. Riggins*, 563 F.2d 1264 (5th Cir. 1977), *cert. denied*, 439 U.S. 848, 99 S.Ct. 148, 58 L.Ed.2d 150 (1978). Drawing all inferences in favor of the government, as we must in light of the jury verdict, we find overwhelming evidence in the record of an agreement between Lopez and his source to possess heroin, whether or not that source was Ayala.

■ Lopez's second contention, that the involvement of two district judges somehow taints the proceedings, is also meritless. We have held repeatedly that district judges have the power to transfer cases by rule, order or consent, to aid in the expeditious administration of the court's docket. *United States v. Stone*, 411 F.2d 597 (5th Cir. 1969).

■ It is also clear that our reversal of the conviction with regard to Ayala does not affect the conspiracy conviction against Lopez. *See, e. g., United States v. Klein*, 560 F.2d 1236 (5th Cir. 1977), *cert. denied*, 434 U.S. 1073, 98 S.Ct. 1259, 55 L.Ed.2d 777 (1978). There is certainly sufficient evidence that Lopez acted in concert with at least one other participant, regardless of that person's identity, to secure heroin to sell to the DEA agent. This involvement consisted of meetings, phone calls and a transfer of heroin on the final evening of the activity and was sufficient to satisfy the requisites of the conspiracy conviction.

■ Lopez was sentenced to a prison sentence of twelve years and a twelve-year special parole term on each count of the indictment, the sentences to run concurrently. After sentence was imposed, the Supreme Court held that a special parole term could not be imposed on a conviction for a narcotics conspiracy. *Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). Therefore, the special parole term imposed as a result of the conspiracy conviction will be vacated.

Accordingly, we AFFIRM both convictions against Lopez, REVERSE both convictions against Ayala and REMAND for proceedings consistent with this opinion.