**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Miriam Rodriguez DIAZ,
Defendant-Appellant.**

No. 80–5239.

United States Court of Appeals,
Fifth Circuit.
Unit B

Sept. 8, 1981.

Benedict P. Kuehne and Donald I. Bierman, Miami, Fla., for defendant-appellant.

Linda Collins-Hertz, Steven E. M. Hartz, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before MARKEY *, Chief Judge, HILL, and THOMAS A. CLARK, Circuit Judges.

THOMAS A. CLARK, Circuit Judge:

Appellant Miriam Rodriguez Diaz and three other individuals not parties to this appeal, Alfredo Diaz (Miriam's husband), Sergio Campo,[1] and Paul C. Arcia, were charged in a three-count indictment dated March 27, 1979, with possession and distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and with conspiring to possess and distribute cocaine in violation of 21 U.S.C. § 846. Defendants Alfredo Diaz and Sergio Campo pleaded guilty to Count III, the distribution charge, and the remaining counts were dismissed. Miriam Rodriguez Diaz and Paul Arcia stood trial together. The jury convicted the appellant on all charges but found Arcia innocent. Miriam Diaz appeals from her convictions. We affirm.

On March 19, 1979, special agents Gene Johnson and Forrest Beverly of the Drug Enforcement Administration, together with a confidential informant, went to the Coral Gables, Florida, home of Miriam and Alfredo Diaz seeking to arrange a possible purchase of cocaine. The DEA agents and their informant were greeted at the door by Miriam Diaz, who then beckoned for her husband. Alfredo Diaz, who was wearing a full leg cast at the time, directed the three callers to a small apartment at the side of the house. Following Mr. Diaz's instructions, the agents and the informant exited the house and proceeded to the entrance to the apartment where they were admitted by Mr. Diaz. The room into which the agents and the informant were ushered was a small apartment with a door leading into the interior of the main house. Agent Johnson began to negotiate with Alfredo Diaz for the purchase of approximately three kilograms of cocaine. Miriam Diaz was not present in the room during the initial discussions about the quality and price of the cocaine. Then Alfredo Diaz, speaking in Spanish, called to the appellant, his wife, who was in the main part of the house. Neither DEA agent understood precisely what Alfredo Diaz said since they did not speak Spanish. The confidential informant, however, could speak and understand Spanish.

Responding to her husband's call, the appellant entered the room carrying a shoe box which she opened and from which she removed two clear plastic bags containing cocaine. She handed the bags of cocaine to Agent Johnson who examined them and passed the bags to Agent Beverly.[2]

Further negotiations as to the price and amount of cocaine followed with Alfredo

---

* Chief Judge of the United States Court of Customs and Patent Appeals, sitting by designation.

1. Campo's true identity is Roberto J. Cabrera. He is also known as "Enrique Polozzio" and "Jorge Carlos Santana."

2. It should be noted that at trial both Miriam and Alfredo Diaz testified that the appellant handed the closed shoe box to her husband who then opened the box and gave the bags of cocaine to the undercover agents. Clearly the jury did not credit this testimony.

Diaz and the agents agreeing to exchange two and one-half kilograms of cocaine for $112,000. Although the appellant did not participate in the negotiations, she remained in the room standing at the door leading to the main part of the house. After agreeing that the sale would take place later that day at another location, the agents and the informant left the Diaz residence to obtain the funds necessary to close the transaction.[3]

Later that day the agents telephoned Mr. Diaz at his home. He instructed them to proceed to a Miami apartment where the delivery of the cocaine would take place. The agents, along with the informant, went to the apartment, but Alfredo Diaz did not appear. The trio then returned to the Diaz residence where they were met by Miriam Diaz and a man later identified as Sergio Campo. Campo informed the agents that Mr. Diaz was at the Miami apartment from which they had just come. Miriam Diaz then asked the agents to take her to the Toledo Apartments near the apartment where the drug sale was to take place. The appellant and Campo, who was carrying a set of triple beam scales in a brown paper bag, left the Diaz residence with the agents and informant and proceeded by automobile to the Toledo Apartments where the group dropped off Mrs. Diaz. The testimony of co-defendant Paul Arcia indicated that Miriam Diaz went to Arcia's apartment in the Toledo Apartments where she met and argued with her husband, Alfredo Diaz. The group, minus the appellant, then proceeded to what turned out to be Campo's apartment, the site originally selected for the sale. The agents, the informant, and Campo waited for Alfredo Diaz to arrive. A short time later Alfredo Diaz entered the apartment on crutches carrying a bag of cocaine which was less than the quantity ordered. Alfredo Diaz left only to return later with Paul Arcia, who carried the additional cocaine. After the cocaine was weighed on the scales Campo had brought with him, the sale was consummated, and the agents arrested Alfredo Diaz, Campo, and Arcia at once, and Miriam Diaz was arrested sometime later.

Before this court, the appellant has raised two main arguments. First, the appellant contends that the evidence presented during her trial was wholly insufficient to support her convictions for conspiracy to possess and distribute cocaine and for actual possession and distribution of the illicit drug. Second, the appellant maintains that under the Supreme Court's holding in *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), and its numerous progeny in this Circuit, the district court erred in denying the appellant's request to compel the government to disclose the identity of the confidential informant.

## I.

■ In reviewing the appellant's argument that her motions for judgment of acquittal should have been granted because the evidence presented at trial was insufficient to support her convictions, we note that "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). This standard of review applies to any criminal conviction, including conspiracies. *United States v. Malatesta*, 590 F.2d 1379 (5th Cir.) (en banc), *cert. denied*, 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979). In determining the sufficiency of proof on a motion for judgment of acquittal, and on review of a trial court's denial of the motion, this court has consistently applied the test of whether the jury might reasonably conclude that the evidence, viewed, of course, in the light most favorable to the government, is inconsistent with every reasonable hypothesis of the defendant's innocence, or, stated in another way, whether a reasonably minded jury must necessarily entertain a reasonable

---

**3.** Alfredo Diaz allowed the agents to take the "samples" of cocaine with them. These samples, valued at approximately $5,000 to $8,000, were subsequently field tested and found positive for cocaine.

doubt of the accused's guilt. *United States v. Marino*, 617 F.2d 76 (5th Cir.), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980); *United States v. Slone*, 601 F.2d 800 (5th Cir. 1979); *United States v. Caro*, 569 F.2d 411 (5th Cir. 1978); *United States v. Haggins*, 545 F.2d 1009 (5th Cir. 1977).

■ Addressing the sufficiency of the evidence issue for the appellant's conspiracy conviction first, under 21 U.S.C. § 846 the essential element of a drug conspiracy is an agreement by two or more persons to violate the narcotics laws. *See, e. g., United States v. Ayala*, 643 F.2d 244 (5th Cir. 1981); *United States v. Beasley*, 519 F.2d 233 (5th Cir. 1975), *vacated and remanded on other grounds*, 425 U.S. 956, 96 S.Ct. 1736, 48 L.Ed.2d 201 (1976). As this court explained in *Ayala*: "The existence of such an agreement may be proved by either direct or circumstantial evidence. The very nature of conspiracy frequently requires that the existence of an agreement be proved by inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme." *United States v. Ayala*, 643 F.2d at 248. Furthermore, the prosecution need not prove that the accused engaged in "any overt act in furtherance of the conspiracy." *United States v. Cardona*, 650 F.2d 54, 57 (5th Cir. 1981).

■ While we recognize that "[i]t is elementary that neither association with conspirators nor knowledge of illegal activity constitute proof of participation in a conspiracy," *United States v. Aguiar*, 610 F.2d 1296, 1303 (5th Cir.), *cert. denied*, 449 U.S. 827, 101 S.Ct. 91, 66 L.Ed.2d 31 (1980), quoting *Roberts v. United States*, 416 F.2d 1216, 1220 (5th Cir. 1969), here our review of the record convinces us that the government's evidence was sufficient to prove that the appellant was an active, knowing, and willing participant in the conspiracy to possess and distribute cocaine. Miriam Diaz was more than merely physically present on the premises where the drug sale negotiations took place. At her husband's request she carried a shoe box into the room where the DEA agents and Alfredo Diaz were negotiating their drug deal. The jury reasonably could have found that the appellant then opened the shoe box, removed two clear plastic bags of cocaine, and handed them to one of the undercover agents. As her husband and the DEA agents negotiated for the purchase of over two and one-half kilograms of cocaine, the appellant remained in the room observing the proceedings. Later in the day when the agents were having difficulty locating Alfredo Diaz in order to complete the drug sale, Miriam Diaz assisted the agents in locating her husband, and indeed had the agents drive her to co-defendant Arcia's apartment where she met her husband and from where he and Arcia left a short time later to deliver the cocaine to the DEA agents. Drawing all reasonable inferences in favor of the government, as we are required to do in light of the jury's verdict, this evidence in the record is sufficient to support the appellant's conviction as an intentional and knowing participant in the conspiracy.

We think that the evidence of Miriam Diaz' participation here exceeded that of the accused conspirators in the two cases extensively relied on by the appellant where the evidence of participation in a conspiracy was held to be insufficient: *United States v. Aguiar*, 610 F.2d 1296 (5th Cir.), *cert. denied*, 449 U.S. 827, 101 S.Ct. 91, 66 L.Ed.2d 31 (1980) (defendant Palenzuela never observed in possession of the cocaine; his statement "They're here," by itself, "could have just as easily been made by any innocent bystander"); and *United States v. Littrell*, 574 F.2d 828 (5th Cir. 1978) (defendant never observed with the cocaine; delivered a car which later was found to have cocaine in the glove compartment).

■ As to her convictions for possession and distribution of cocaine under 21 U.S.C. § 841(a), the appellant's argument that there was insufficient evidence to support her convictions on the substantive charges is without merit. First, as to Count III, her co-conspirators, Alfredo Diaz and Sergio Campo, testified that they pleaded guilty to

the distribution of cocaine. Since it is a well-settled principle that a party to a continuing conspiracy may be held responsible for a substantive offense committed by a co-conspirator in furtherance of the conspiracy, even though that party does not participate in the substantive offense or have any knowledge of it, *see, e. g., Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *United States v. Tilton*, 610 F.2d 302, 309 (5th Cir. 1980); *United States v. Michel*, 588 F.2d 986, 999 (5th Cir.), *cert. denied*, 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979), Miriam Diaz is deemed guilty of the substantive offense of distribution of cocaine. Furthermore, as to the possession charge, Count II, the evidence which established that the appellant brought the cocaine into the side apartment and handed two packages to the undercover agents is clearly sufficient to support her conviction for possession.

## II.

In her motion for a bill of particulars filed with the trial court before trial, the appellant requested that the government provide her with, *inter alia*, the names of the persons who were present at the meetings where the cocaine transaction was arranged and consummated. A magistrate denied this portion of the appellant's bill of particulars. The appellant did not appeal this denial to the district court, nor did she file a specific pre-trial motion seeking to have the government disclose the name and address of its confidential informant. At trial, on cross-examination of DEA Agent Johnson, appellant's counsel sought to elicit the name of the confidential informant. Government counsel objected and the court sustained the objection. At the close of the government's case, counsel for the co-defendant Arcia orally moved for disclosure of the identity of the confidential informant. This motion was joined by the appellant. Later in the course of the trial the trial judge denied the motion.

In her effort to compel disclosure of the government's confidential informant, Diaz presents a three-step argument that she contends mandated at least an *in camera* hearing by the district court. First, the appellant stresses that the confidential informant witnessed every event which led to Diaz' prosecution and was responsible for introducing the DEA undercover agents to Alfredo Diaz. Second, and more crucial to her case, is the appellant's argument that the informant, who was bilingual, was the only person associated with the government's side of the case who understood that part of the conversations concerning the drug transaction which were in Spanish. Specifically, the argument is that because of his understanding of Spanish, the informant could testify that Miriam Diaz did not know that there was cocaine in the shoe box and that, indeed, she was shocked to learn that her husband was engaged in illegal drug trafficking. Furthermore, Diaz contends that the informant would have been the only "government interested witness" who would have disputed DEA Agent Johnson's testimony that the appellant spoke some English when the agents returned to the Diaz residence in their attempt to locate Miriam's husband. Third, the appellant emphasizes that the government did not meet its burden of establishing that the disclosure of the informant's identity was not warranted either because the informant might have been endangered if his identity were revealed or because of the informant's past or future usefulness as a confidential source.

At trial, after having listened to the testimony of the appellant and her co-defendant Arcia to the effect that they did not know the identity of the confidential informant, the trial judge denied the defense motion to compel disclosure of the informant. The district judge based his ruling on two grounds. First, the judge indicated that he did not believe the appellant's testimony that she did not know the identity of the confidential informant. Second, applying the *Roviaro* balancing test to the facts of this case, the judge concluded that disclosure was not required.

For several reasons we are not persuaded by the appellant's argument that the dis-

trict court erred in denying disclosure of the identity of the confidential informant. First, our review of the record leads us to conclude that Diaz made no serious timely effort to discover the informant's identity. The appellant did not file a pre-trial motion specifically directed at compelling the government's disclosure of the confidential informant. Although Diaz did file a motion for a bill of particulars requesting the names of witnesses to the drug transaction, the appellant did not appeal the magistrate's denial of this general request to the district court. Furthermore, it was only after the government had concluded its case in chief that the appellant raised the informant-disclosure issue with sufficient particularity for the district court to consider the motion.

This delay may have been an intentional tactical choice. Whatever the reason, we consider the appellant's motion to compel disclosure of the confidential informant to have been untimely. The appellant undoubtedly was aware that a third person had accompanied the two undercover agents throughout the events which led to her arrest. Additionally, by contending that she adequately moved for disclosure of the informant's identity in her motion for bill of particulars filed prior to trial, the appellant thereby concedes that well in advance of trial she was aware that the third individual had been a confidential informant. In such circumstances, the appropriate procedure is for the defendant to file a specific pre-trial motion requesting disclosure. If the confidential informant's identity was as crucial to the appellant's defense as she contends on appeal, we are unable to understand why she was not more diligent in seeking disclosure.

We are also convinced that disclosure was unwarranted for a second important reason. In our view, under the holding in Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1

L.Ed.2d 639 (1957), the district court was correct in ruling that disclosure was not required. Roviaro v. United States is the leading Supreme Court decision on the issue of the disclosure of a confidential informant's identity. There the Court indicated that the purpose of the informant's privilege "is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." 353 U.S. at 59, 77 S.Ct. at 627. Fundamental fairness requires that "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Id. at 60–61, 77 S.Ct. at 628 (footnote omitted). In Roviaro the Supreme Court set forth a balancing test to be used in weighing the defendant's need for disclosure against the informer's privilege to withhold his identity.

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

Roviaro v. United States, 353 U.S. at 62, 77 S.Ct. at 628–29.

Countless decisions in this Circuit have applied the balancing test set forth in Roviaro.[4] A review of these cases clearly indi-

4. See, e. g., United States v. Ayala, 643 F.2d 244 (5th Cir. 1981); United States v. Gonzales, 606 F.2d 70 (5th Cir. 1979); United States v. Hare, 589 F.2d 242 (5th Cir. 1979); United States v. Silva, 580 F.2d 144 (5th Cir. 1978); United States v. Bower, 575 F.2d 499 (5th Cir.),

cert. denied, 439 U.S. 983, 99 S.Ct. 572, 58 L.Ed.2d 654 (1978); United States v. Alonzo, 571 F.2d 1384 (5th Cir.), cert. denied, 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978); United States v. Hansen, 569 F.2d 406 (5th Cir. 1978); United States v. Morris, 568 F.2d 396

cates that in ruling on motions to compel disclosure and production of a confidential informant, courts must apply the *Roviaro* balancing test to the unique facts and circumstances of each individual case. However, this court has noted previously that

the courts have not attempted to formulate a blanket rule for cases like this one, although several broad categories can be discerned in the published decisions. At one extreme are those cases where the informant was a mere tipster. It is settled that the *Roviaro* principle does not require disclosure and production of such an informant. See, e. g., *Bourbois v. United States*, 530 F.2d 3 ([5th Cir.] 1976); *United States v. Clark*, 482 F.2d 103, 104 (5th Cir. 1973). At the other extreme are cases such as *Roviaro* itself, in which an informer has played a crucial role in the alleged criminal transaction, and disclosure and production of the informer are required to ensure a fair trial. Examples of such cases in this circuit include *United States v. Jiminez-Serrato*, 451 F.2d 523, 526 (5th Cir. 1971) (informer was the only participant in transaction who could establish defendant's *mens rea*); *Portomene v. United States*, 221 F.2d 582, 583–84 (5th Cir. 1955) (in pre-*Roviaro* case, informer was the one who actually purchased narcotics from the defendant). Still another group of cases is typified by *United States v. Toombs*, [497 F.2d 88 (5th Cir. 1974)], in which there was a slight possibility that the defendant might benefit from disclosure, but the government had demonstrated a compelling need to protect its informer.

*United States v. Fischer*, 531 F.2d 783, 787 (5th Cir. 1976).

Most recently, this court has addressed the confidential-informant-disclosure issue in *United States v. Ayala*, 643 F.2d 244 (5th Cir. 1981). There both defendants filed a pre-trial motion to compel the government to disclose the identity of a confidential informant. The district court in that case, utilizing the *in camera* procedure specifically endorsed by this court in *United States v. Freund*, 525 F.2d 873 (5th Cir.), *aff'd following remand*, 532 F.2d 501 (5th Cir.), *cert. denied*, 426 U.S. 923, 96 S.Ct. 2631, 49 L.Ed.2d 377 (1976), interviewed the informant prior to ruling on the defendants' motions. The key issue in *Ayala* was whether the informant could identify one of the co-defendants as a participant in an illicit drug transaction. Although the district judge denied the motions to compel disclosure of the informant, this court reversed as to one co-defendant on the ground that the *Roviaro* balancing test tipped in favor of disclosure to the defense. The court concluded disclosure was warranted since the co-defendant had made the specific claim that the informant was the only person other than his co-defendant who could cast doubt on a DEA agent's courtroom identification of the accused. As to the other defendant, this court held that "[b]ecause of the absence of a sufficiently specific contention of the relevancy and helpfulness of the testimony to [his] defense, however, we cannot reverse his conviction." 643 F.2d at 247.

Turning to the case *sub judice*, our first task is to evaluate the important considera-

(5th Cir. 1978); *United States v. Alexander*, 559 F.2d 1339 (5th Cir. 1977), *cert. denied*, 434 U.S. 1078, 98 S.Ct. 1271, 55 L.Ed.2d 785 (1978); *United States v. Scott*, 555 F.2d 522 (5th Cir.), *cert. denied*, 434 U.S. 985, 98 S.Ct. 610, 54 L.Ed.2d 478 (1977); *United States v. Alfonso*, 552 F.2d 605 (5th Cir.), *cert. denied*, 434 U.S. 857, 98 S.Ct. 179, 54 L.Ed.2d 129 (1977); *United States v. Worthington*, 544 F.2d 1275 (5th Cir.), *cert. denied*, 434 U.S. 817, 98 S.Ct. 55, 54 L.Ed.2d 72 (1977); *United States v. Hernandez-Vela*, 533 F.2d 211 (5th Cir. 1976); *United States v. Fischer*, 531 F.2d 783 (5th Cir. 1976); *Bourbois v. United States*, 530 F.2d 3 (5th Cir. 1976); *United States v. Doe*, 525 F.2d 878 (5th Cir.), *cert. denied*, 425 U.S. 976, 96 S.Ct. 2179, 48 L.Ed.2d 801 (1976); *United States v. Freund*, 525 F.2d 873 (5th Cir.), *aff'd following remand*, 532 F.2d 501 (5th Cir.), *cert. denied*, 426 U.S. 923, 96 S.Ct. 2631, 49 L.Ed.2d 377 (1976); *United States v. Toombs*, 497 F.2d 88 (5th Cir. 1974); *United States v. Davis*, 487 F.2d 1249 (5th Cir. 1973); *United States v. Clark*, 482 F.2d 103 (5th Cir. 1973); *United States v. Mendoza*, 433 F.2d 891 (5th Cir. 1970), *cert. denied*, 401 U.S. 943, 91 S.Ct. 953, 28 L.Ed.2d 225 (1971); *Miller v. United States*, 273 F.2d 279 (5th Cir. 1959), *cert. denied*, 362 U.S. 928, 80 S.Ct. 756, 4 L.Ed.2d 747 (1960); *Gilmore v. United States*, 256 F.2d 565 (5th Cir. 1958).

tion of the extent of the confidential informant's participation in the criminal activity. *See, Suarez v. United States*, 582 F.2d 1007, 1011 (5th Cir. 1978); *United States v. Fischer*, 531 F.2d 783, 787 (5th Cir. 1976). As this court noted in *United States v. Ayala, supra*, "[t]he more active the participation, the greater the need for identification." 643 F.2d at 246. While the informant here certainly was more than a mere "tipster," his involvement in this drug transaction was not as an integral participant. Rather, we consider his participation to have been nothing more than serving as an "introducer" simply having provided the undercover agents with an introduction to the suspected cocaine dealers. After the agents had been introduced to Alfredo Diaz, the informant's role became that of an observer while the negotiations were conducted around him. When an informant's level of involvement in the criminal activity is that of minimal participation, this factor by itself will not compel disclosure. *Cf. United States v. Toombs*, 497 F.2d 88 (5th Cir. 1974).

■ The appellant's second argument on this issue is that she adequately met her burden to show the possible significance of the confidential informant's testimony to her defense that she was not a knowing and willing participant in the conspiracy to sell cocaine. A defendant seeking to compel disclosure must make a sufficient showing that the informer's testimony would significantly aid the defendant in establishing the asserted defense. *United States v. Ayala, supra.* If the defendant fails to meet this burden, disclosure will not be required. *United States v. Franklin*, 598 F.2d 954 (5th Cir.), *cert. denied*, 444 U.S. 870, 100 S.Ct. 147, 62 L.Ed.2d 95 (1979). *See also United States v. Hare*, 589 F.2d 242 (5th Cir. 1979). Diaz claimed that since it was known that the confidential informant could speak Spanish and both undercover agents could not, the informant's testimony could 1) establish that the appellant did not know that cocaine was in the shoe box, and 2) dispute Agent Johnson's testimony that Miriam Diaz spoke some English to him when the agents were trying to locate her husband.

Although the appellant submitted that the confidential informant's possible testimony would support these assertions, the district court chose not to interview the informant *in camera* to determine what additional evidence, if any, the unidentified informant could provide.

We do not think that it was necessary for the district court to interview the informant *in camera* for we conclude that the informant's testimony could not have been significantly helpful to the appellant's defense. First, the government's theory in its prosecution of Diaz was that her willing participation in the criminal activity was evidenced not by what, if anything, she either had said or been told, but rather by her physical conduct in retrieving the shoe box at her husband's request and handing the cocaine to the agents. Also, her observation of the negotiations for approximately fifteen minutes and her activity later in the day in assisting the agents in locating her husband so that the sale could be consummated dealt primarily with her physical acts in furtherance of the criminal conduct and not with any conversation in Spanish or English that she may have engaged in.

Nevertheless, the appellant was able to put her knowledge of the English language, or her lack thereof, at issue. Both the appellant and her husband testified that she spoke only Spanish. DEA Agent Johnson rebutted this assertion with his testimony that Diaz had spoken limited English to him. Also, the evidence revealed that the appellant had lived in this country, and thereby had been exposed to the English language, for approximately ten years. While the language issue was of questionable relevancy, the court below and the jury had before them adequate evidence on the matter and could best judge the credibility of the witnesses and the appellant.

Therefore, the appellant failed to establish sufficiently the importance of the informer's testimony so as to compel disclosure. As a result, it is unnecessary to consider the third important factor in *Roviaro*: the government's interest in nondisclosure

of the identity of its confidential informant. The district court correctly decided that the appellant was not entitled to disclosure.

### III.

As a result of her conviction in the district court, Miriam Diaz was sentenced to a prison term of three years and a four-year special parole term on each count of the indictment, the sentences to be served concurrently. The appellant argues, the government concedes, and we agree that as a result of the Supreme Court's intervening decision in *Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980), the special parole term imposed on the appellant as a result of the narcotics conspiracy conviction must be vacated. Therefore, following the issuance of the mandate, the district court is instructed to amend the appellant's sentence by deleting the special parole term imposed for the conspiracy conviction. *See United States v. Kennington*, 650 F.2d 544, 546 (5th Cir. 1981); *United States v. McFarland*, 633 F.2d 427, 430 (5th Cir. 1980).

The convictions are AFFIRMED with instruction.