**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jesus AGUIRRE AGUIRRE and Joe Salvador Cervantes, Defendants-Appellants.**

**No. 82–1547.**

United States Court of Appeals, Fifth Circuit.

Sept. 23, 1983.

Alan Brown, San Antonio, Tex., for Aguirre.

Warren Weir, San Antonio, Tex., for Cervantes.

Edward C. Prado, U.S. Atty., Sidney Powell, John Murphy, Asst. U.S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before RUBIN, TATE, and JOLLY, Circuit Judges.

TATE, Circuit Judge:

The defendants Jesus Aguirre Aguirre and Joe Salvador Cervantes were convicted of conspiracy to possess heroin with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 846. Cervantes was also convicted of three counts of possession of heroin with intent to distribute, 21 U.S.C. § 841(a)(1), and Aguirre was convicted of aiding and abetting Cervantes on one count of possession of heroin with intent to distribute, 18 U.S.C. § 2. On appeal, the defendants question, inter alia, the sufficiency of the evidence, the use of "other offense" testimony in establishing the *James* predicate for evidentiary use of statements of a coconspirator, and the refusal of the government to reveal the location of a confidential informant allegedly needed by a

defendant to establish an entrapment defense. We find that the defendants' contentions are without merit, and we affirm.

*The Facts*

The defendants' convictions arise from a series of drug transactions with Drug Enforcement Administration (DEA) agent Art Rodriguez. Initial contact between the defendants and Rodriguez was arranged by a government informant known as "Neto". On June 7, 1982, Neto was given an ounce of heroin by the defendant Cervantes to deliver to Rodriguez. In a telephone conversation with Cervantes that same day, Rodriguez agreed to purchase the heroin, giving Neto the money for delivery to Cervantes.

A meeting between Cervantes and Rodriguez took place the following day, June 8, 1982, at which Neto was present. (Neto was not involved in any negotiation between Rodriguez and the defendant Joe Cervantes following that meeting.) Rodriguez purchased four ounces of heroin, paying for two ounces in cash, and agreeing to pay for the rest as soon as the heroin could be resold. At that meeting Cervantes indicated that he and "Compadre" were importing large quantities of heroin into the United States from Mexico. Cervantes inquired as to whether Rodriguez knew of anyone who would be interested in purchasing large quantities of heroin, indicating that he and Compadre were expecting a large shipment within a week. Rodriguez responded that he would be in contact with Cervantes with regard to purchasing heroin from that shipment.

On June 14, 1982, Rodriguez, unable to reach Joe Cervantes, paid George Cervantes, Joe's stepson, for the amount owed on the remaining two ounces of heroin. George Cervantes indicated that he was aware of the transaction, and offered Rodriguez an additional four or five ounces of heroin, which Rodriguez refused. George also indicated to Rodriguez that "they" had quantities of cocaine to distribute.

Agent Rodriguez met with the defendant Joe Cervantes again on June 18, 1982. At that time, Cervantes indicated that he had gone to Mexico to see Compadre, and that they had prepared the heroin for shipment. Cervantes was waiting for Compadre to arrive in San Antonio to "cut" the heroin. Rodriguez inquired as to the purchase price for a kilogram of heroin, but Cervantes would not quote a price until Compadre arrived. Cervantes did offer Rodriguez four or five ounces of heroin he had available for immediate purchase, and Rodriguez purchased two ounces. Cervantes also inquired about Rodriguez's interest in dealing in other drugs. At that meeting Cervantes referred to his drug dealings in Chicago, and noted that he and Compadre had been arrested in Chicago on charges unrelated to their drug dealings.

On June 22, 1982, in a telephone conversation with Rodriguez, Cervantes stated that he would be travelling to the Mexican border the following day to pick up Compadre. In telephone conversations on June 23, 1982, Cervantes indicated that he had picked up Compadre and that "they" had "cut" a sample of the heroin shipment for Rodriguez. A meeting was arranged for the following morning at which time Rodriguez was to pick up the sample and deliver four bottles of lactose to Cervantes.

The meeting took place as planned on the morning of June 24, 1982. The codefendant Aguirre travelled to the meeting with Cervantes, but remained in the vehicle and did not take part in the negotiations between Cervantes and Rodriguez. In response to Rodriguez's question as to whether the man he had seen in the truck was "Compadre", Cervantes identified Aguirre as Compadre. Cervantes indicated that, following the meeting, he and Compadre were going to "cut" the remainder of the heroin shipment.

A second meeting was scheduled for that evening for delivery of the kilogram of heroin. At the meeting, it was disclosed that Compadre was staying at Joe Cervantes' house. Joe Cervantes arrived without the heroin, but indicated that his stepson George would be bringing the heroin to the meeting shortly. Upon George's arrival, Joe and George Cervantes were arrested. DEA agents proceeded to Joe Cervantes'

house, where Aguirre was arrested and more heroin was seized.

On July 6, 1982, a federal grand jury returned a four count indictment against George Cervantes, Jesus Aguirre Aguirre, and Joe Salvador Cervantes. The three defendants were charged in count one with conspiracy to possess heroin with intent to distribute beginning on or before June 8, 1982 and continuing until on or about June 24, 1982. In three additional counts in the indictment, Joe Cervantes was charged with possession of heroin with intent to distribute on June 8, 18, and 24. George Cervantes and Jesus Aguirre Aguirre were charged with aiding and abetting Joe Cervantes' possession with intent to distribute on June 24.

George Cervantes pleaded guilty, but Joe Cervantes and Jesus Aguirre Aguirre exercised their right to trial by jury and were found guilty on all counts. The defendants Joe Salvador Cervantes and Jesus Aguirre Aguirre appeal their convictions.

## I. *Aguirre's Contentions*

### A. *Sufficiency of the Evidence*

Aguirre contends that (A) there was insufficient evidence to sustain the jury verdict of guilty on either the conspiracy charge or the aiding and abetting charge, and (B) the trial court erred in using evidence of prior similar acts to support its *James* finding that a conspiracy was shown independent of out-of-court declarations by coconspirators.

Aguirre challenges the sufficiency of the evidence to sustain his convictions for conspiracy to possess heroin with intent to distribute and for aiding and abetting Joe Cervantes' possession of heroin with intent to distribute on June 24, 1982. The appropriate standard of review for such a contention is whether "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.) (en banc), *cert. granted on another issue,* —— U.S. ——, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982). Further, this court must view

the evidence and all reasonable inferences which may be drawn therefrom, in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1972); *United States v. Lorence,* 706 F.2d 512, 518 (5th Cir.1983).

### 1. *Conspiracy*

In conspiracy cases, a finding of guilt must be predicated upon proof beyond a reasonable doubt that a conspiracy to accomplish an unlawful purpose existed, the defendant had knowledge of the unlawful conspiracy, and the defendant voluntarily agreed to join the conspiracy. *United States v. Montemayor,* 703 F.2d 109, 115 (5th Cir.1983); *United States v. Jackson,* 700 F.2d 181, 185 (5th Cir.1983). In a drug conspiracy case, however, under the provisions of the drug conspiracy statute, proof of an overt act in furtherance of the conspiracy is not necessary. *United States v. Kupper,* 693 F.2d 1129, 1134 (5th Cir.1982). Moreover, proof of the defendant's knowledge of all the details of the drug conspiracy is not required, as long as knowledge of the essential details is established, and the defendant need neither have been present at the inception of the conspiracy, nor have played a major role therein. *United States v. Montemayor, supra,* 703 F.2d at 115; *United States v. Alvarez,* 625 F.2d 1196, 1198 (5th Cir.1980) (en banc), *cert. denied,* 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981).

A conspiracy may be proved by direct as well as circumstantial evidence. *United States v. Kupper, supra,* 693 F.2d at 1134. Although mere presence at the scene of the crime or close association with a coconspirator will not support the inference of a conspiracy, *United States v. Davis,* 666 F.2d 195, 201 (5th Cir.1982), a conspiracy may be inferred from a concert of action, *United States v. Dean,* 666 F.2d 174, 178 (5th Cir.1982), or "a development and a collocation of circumstances." *Glasser v. United States, supra,* 315 U.S. at 80, 62 U.S. at 469 (quoting from *United States v. Manton,* 107 F.2d 834, 839 (2nd Cir.1938), *cert. denied,* 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012 (1939)). Moreover, evidence concern-

ing criminal acts prior to the period charged in the indictment may be admissible as bearing on the existence and purpose of the conspiracy charged. *United States v. Bates,* 600 F.2d 505, 509 (5th Cir.1979).

■ Viewing the evidence and all reasonable inferences which may be drawn therefrom in the light most favorable to the government, we find that the evidence presented at trial was sufficient for a reasonable trier of fact to find beyond a reasonable doubt that Aguirre conspired with Cervantes to possess heroin with intent to distribute. George Taylor testified that Joe Cervantes and Aguirre had been dealing in the distribution of heroin from as early as February of 1982. Taylor indicated that he had been involved in 'cutting' heroin on two occasions with the defendants, and that on each occasion he had subsequently delivered the heroin to Tomas Cabrales in Chicago. Agent Rodriguez testified that Cervantes had identified Aguirre as his Compadre, the person with whom Cervantes was importing large quantities of heroin.

Although Cervantes himself testified that Aguirre was not involved in the drug dealings, the jury apparently found his sworn testimony incredible and found Aguirre guilty on the conspiracy charge. There being sufficient evidence to support that finding, we accordingly affirm Aguirre's conviction on that conspiracy charge.

## 2. *Aiding and Abetting*

■ To aid and abet, the defendant must wilfully associate himself in some way with the criminal venture and wilfully participate in it as he would in something he wished to bring about. *United States v. Fischel,* 686 F.2d 1082, 1087 (5th Cir.1982). "The defendant need not, however, commit all elements of the substantive underlying offense as long as he aided and abetted each element." *Id.* Thus, the crime of aiding and abetting possession of heroin with intent to distribute requires proof of (1) aiding and abetting the possession and (2) aiding and abetting the intent to distribute. *United States v. Pozos,* 697 F.2d 1238, 1242 (5th Cir.1983); *United States v. Fischel, supra,* 686 F.2d at 1087. Proof that

the defendant was present at the actual distribution, however, is not required. *United States v. Pozas, supra,* 697 F.2d at 1242.

■ We find sufficient evidence in the record for a reasonable trier of fact to conclude beyond a reasonable doubt that Aguirre aided and abetted Cervantes' possession of heroin with intent to distribute. A reasonable juror could infer that Aguirre supplied the drugs to Joe Cervantes. Further, when Cervantes delivered a sample of the shipment of heroin to Agent Rodriguez on June 23, 1982, Aguirre had travelled to the scene in the truck with Cervantes. Thus, a reasonable juror could find that Aguirre aided Cervantes in his possession of the heroin. Cervantes and Aguirre were dealing in a large quantity of heroin. Moreover, Cervantes would not "cut" the heroin until Aguirre arrived from Mexico. A reasonable juror, therefore, could find that Aguirre aided Cervantes in his intent to distribute the heroin. Accordingly, we affirm the jury's finding of guilt on this charge.

## B. James *Finding*

■ A coconspirator's hearsay statements are not admissible into evidence unless evidence independent of the hearsay establishes that (1) there is a conspiracy; (2) the statement was made during the course and in furtherance of the conspiracy; and (3) the defendant and declarant were members of the conspiracy. *United States v. James,* 590 F.2d 575, 578 (5th Cir.) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). This *James* finding by the trial court of the sufficiency of the independent evidence should not be disturbed on appeal unless clearly erroneous. *United States v. Nichols,* 695 F.2d 86, 91 (5th Cir.1982).

■ Here, Aguirre complains that the district court erroneously admitted into evidence against him out-of-court declarations made by Cervantes to Rodriguez, to which the latter testified. (Aguirre also contends that without this testimony, there was in-

sufficient evidence to convict him of conspiracy.)

Aguirre complains that the district court, in finding that the *James* predicate of independent testimony was met, erred in accepting the testimony of Taylor, who testified as to criminal acts that occurred in February, March, and April 1982, which were prior to the June 8–24, 1982 dates of the conspiracy charged by the indictment. Over Aguirre's objection, the district court permitted this evidence to be introduced, not as part of the conspiracy, but instead as similar acts; when the jury heard the evidence, the district court instructed it at length that it was not to consider this similar-act testimony as evidence of guilt, but only for the limited purpose of deciding whether they could draw from clear and conclusive evidence the inference that the defendants had acted wilfully and with specific intent with regard to the offense charged.

Aguirre complains that admission of this other crime testimony was inadmissible under Fed.R.Evid. 404(b)—"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he had acted in conformity therewith." However, the same rule permits the admissibility of such evidence for "other purposes, such as proof of ... intent, plan * * *." *Id.* " 'Evidence of behavior antedating the period covered by the indictment is generally admissible as bearing on the existence and purpose of the conspiracy and the significance of later behavior.' " *United States v. Bates, supra,* 600 F.2d at 509. The testimony of Taylor was thus admissible for proper "other purposes" under 404(b). *See, e.g., United States v. Nakaladski,* 481 F.2d 289, 296–98 (5th Cir.), *cert. denied* 414 U.S. 1064, 94 S.Ct. 570, 38 L.Ed.2d 469 (1973) (evidence admitted concerning prior similar extortionate acts with other individuals to establish the defendants' intent and general conspiratorial purpose and modus operandi).

Nor can we say under the present circumstances that the probative value of this relevant testimony, needed to establish the conspiracy by independent evidence, was substantially outweighed by the danger it would cause unfair prejudice to the defendant. Fed.R.Evid. 403. We thus find no abuse of discretion in the admission of Taylor's testimony for the limited purpose of establishing the *James* predicate.

We thus find no reversible merit to this contention.

## II. *Cervantes' Contentions*

Cervantes contends that the trial court erred in (A) allowing the admission of extrinsic offense evidence at trial, (B) refusing to declare a mistrial because of improper statements made by Aguirre's counsel, and (C) refusing to order the disclosure of the location of a confidential informant.

### A. *Extrinsic Offense Evidence*

Cervantes objects to the use of extrinsic offense evidence, over his objection, which was used to establish the identity of the "Compadre" to whom he had referred repeatedly in his conversations with Rodriguez, the government agent. Whether "Compadre" was indeed Aguirre, as the jury inferentially found in convicting him of conspiracy, was a highly contested issue at the trial. According to Rodriguez, Cervantes had told him that he and "Compadre" had been arrested in Chicago in corroboration of its contention that Aguirre was the "Compadre" to whom Cervantes had referred. The government—over Cervantes' objection and *Cervantes'* (not Aguirre's) willingness to stipulate that the two had been arrested together in Chicago—produced evidence of the Chicago arrest of the two. (In the absence of codefendant Aguirre's willingness so to stipulate, the government contends that this evidence was the only method by which to supply corroborating proof of the circumstance.)

Cervantes thus argues that the trial judge erred in allowing Officer Isakson of the Chicago Police Department to testify as to the arrest of the defendants in Chicago on May 13, 1982. We find no merit

to this contention. Proof of identity is a recognized exception to the prohibition against admissibility of other "crimes, wrongs, or acts," provided (1) the evidence is relevant to an issue other than the defendant's character, and (2) the evidence possesses probative value that outweighs any undue prejudice. Fed.R.Evid. 404(b); *United States v. Beechum*, 582 F.2d 898, 911–912 (5th Cir.1978) (en banc) *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

The identity of Compadre (Aguirre) was at issue at trial. Although Cervantes had not referred to his coconspirator by name, he did relate to Agent Rodriguez the arrest with Compadre in Chicago. Thus, the details of the arrest were relevant and probative on the issue of the identity of Compadre. Moreover, the jury already knew about the arrest, and cross-examination revealed that the defendants were not in possession of any controlled substances at the time of the arrest. Thus, prejudice to Cervantes was minimal, and we find no abuse of discretion in the trial judge's admitting the evidence of the arrest.

### B. *Improper Remark of Counsel*

■ Cervantes asserts that the trial court improperly refused to declare a mistrial when Aguirre's counsel announced in his opening statement that George Cervantes had pled guilty to the offenses charged. The remark was made intentionally. Immediately following the remark, the trial judge promptly instructed the jury to disregard the remark and to completely disregard George Cervantes' absence from the trial. Moreover, the government had a very strong case against Joe Cervantes. Thus, we find that any prejudice to Joe Cervantes in this case was harmless.

### C. *Location of Informant*

■ The government generally is privileged to withhold from disclosure the identity of persons who furnish information regarding violation of the law to law enforcement officials. *Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1

L.Ed.2d 639 (1957). If the identity of the informant has been disclosed to "those who would have cause to resent the communication," however, the privilege is no longer applicable. 353 U.S. at 60, 77 S.Ct. at 627. Although the confidential informant's privilege no longer exists when the informant is known to the defendant, "[t]he need for the informant's safety, the avoidance of jeopardizing other operations, or the defendant's ability to locate the informant himself, for example, may justify nondisclosure of the informant's address." *United States v. Fischel*, 686 F.2d 1082, 1092 (5th Cir.1982). The government, however, must set forth with particularity its reasons for nondisclosure of the informant's whereabouts. *Id.*

Cervantes submitted a discovery request for the "name, identity, and whereabouts" of any informants. Cervantes was aware of the identity of the informant Neto. The government, however, has set forth specific grounds for nondisclosure of Neto's whereabouts. In particular, the government contends that the informant is involved in ongoing investigations and that disclosure of his whereabouts would endanger the investigation and jeopardize the informant's safety. Thus, the government has set forth valid reasons for declining to comply with the defendant's discovery request.

■ We do not feel, however, that the mere setting forth of a valid reason for nondisclosure ends the inquiry. Even when the confidential informant's privilege is applicable, that privilege is limited by the fundamental requirements of fairness to the defendant, "[w]here the disclosure . . . is relevant and helpful to the defense of any accused, or is essential to a fair determination of a cause." *Roviaro v. United States, supra,* 353 U.S. at 60–61, 77 S.Ct. at 628. Surely the public's interest in effective law enforcement is no greater in a situation in which the informant's identity is known and the confidential informant's privilege does not exist. Therefore, the government's asserted reason for nondisclosure of the informant's whereabouts must be balanced against the accused's right to prepare a defense, as is the case with disclo-

sure of an informant's identity. *Cf. United States v. Ayala,* 643 F.2d 244, 246 (5th Cir. 1981).

In striking the balance, disclosure must be compelled upon "a sufficient showing that the informant's testimony would significantly aid the defendant in establishing the asserted defense." *United States v. Diaz,* 655 F.2d 580, 588 (5th Cir.1981), *cert. denied,* 455 U.S. 910, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982). The informant's level of participation in the criminal activity is an important factor. *United States v. Azala, supra,* 643 F.2d at 246.

When the asserted defense is entrapment and the government's informant was the sole participant, other than the accused in the crime charged, the defendant's need for the testimony of the informant may become compelling. *See Roviaro v. United States, supra,* 353 U.S. at 64–65, 77 S.Ct. at 630. The focal point of the inquiry with an entrapment defense, however, is the predisposition of the defendant. *United States v. Webster,* 649 F.2d 346, 348 (5th Cir.1981).

The defendant's actions both before or after the commission of the crime may be considered on the issue of his predisposition. *See United States v. Carreon,* 626 F.2d 528, 535 n. 14 (7th Cir.1980); *United States v. Dickens,* 524 F.2d 441, 445 (5th Cir.1975). *Cf. United States v. Burkley,* 591 F.2d 903, 916 (D.C.Cir.), *cert. denied,* 440 U.S. 966, 99 S.Ct. 1516, 59 L.Ed.2d 782 (1978) ("where there is minimal government inducement, the prosecution may present this [minimal government inducement] as evidence of the defendant's initial proclivity to commit the offense...") When the informant's participation in the alleged entrapment scheme is minimal and the defendant's action both before and after the contact with the informant indicate a strong predisposition to commit the crime charged, very little will be gained from the informant's testimony, and fundamental fairness may not be offended by protecting the informant's confidentiality. *Cf. United States v. Cochran,* 697 F.2d 600, 607 (5th Cir.1983); *United States v. Toombs,* 497 F.2d 88, 93 (5th Cir.1974).

In this case, the informant's participation in the transaction is uncontroverted. We find, however, that, his participation was minimal. The informant arranged and was present at the first meeting between Joe Cervantes and Agent Rodriguez. The remaining transactions, however, were completed without any participation by the informant. Further, there is strong evidence to suggest that Cervantes had been distributing heroin from as early as February of 1982. Therefore, because of the minimal participation by the informant and the lack of possibility shown that the informant could provide probative support to Cervantes' entrapment defense, we find no merit in the contention that the trial judge erred in refusing to require disclosure of the informant's whereabouts.

*Conclusion*

Accordingly, we AFFIRM the convictions appealed from.

AFFIRMED.