**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Cesar TENORIO–ANGEL,**
**Defendant-Appellant.**

No. 83–5752.

United States Court of Appeals,
Eleventh Circuit.

April 8, 1985.

Michael D. Abzug, Los Angeles, Cal., Bruce M. Wilkinson, Stuart, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Linda Collins-Hertz, Lynne W. Lamprecht, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before HILL, KRAVITCH and SMITH [*], Circuit Judges.

KRAVITCH, Circuit Judge:

Appellant Cesar Tenorio-Angel was convicted of conspiracy to possess with intent to distribute cocaine,[1] possession with intent to distribute cocaine,[2] and distribution of cocaine.[3] He appeals claiming that: the indictment should have been dismissed for violation of the Speedy Trial Act, 18 U.S.C. § 3161; he was denied his sixth amendment right to call and cross-examine witnesses by the trial court's refusal to require the government to produce its confidential informant; the trial court erred in not declaring a mistrial after it struck from evidence a previously admitted tape recording; and the trial court incorrectly instructed the jury on the law of conspiracy. Because we find no error in any of the challenged actions, we affirm.

## I. *Background*

This case involves a cocaine conspiracy by appellant, Fernando Lnu, Loic Boichoit, and Marc de Tremmerie, and possession and distribution of cocaine by appellant and Fernando Lnu. On March 20, 1983, confidential informant Rudy Bouchouston introduced Boichoit to several government agents, including special agent Luis Rivera. Boichoit discussed the possibility of a large scale cocaine transaction with the agents. On April 13, 1983, Boichoit and Rivera met again. At this meeting, Boichoit told Rivera that he was willing to sell him two kilograms of cocaine initially, and, if the deal was successful, to sell him 100 kilograms per week. Agent Rivera agreed to purchase the two kilograms. Boichoit said that one of his people would contact Rudy (the informant) and that person would deal on Boichoit's behalf. Rudy attended this meeting, but did not participate in the conversation.

On May 25, 1983, Rudy called Rivera and told him that Boichoit's people had called him and that they were ready to meet and transact the deal. Agents Rivera and Aguilar met Rudy, appellant, and another man known as Fernando at a shopping center according to plan. Rivera and Aguilar testified that appellant stated that he

---

[*] Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. 21 U.S.C. § 846.

2. 21 U.S.C. § 841(a)(1).

3. 21 U.S.C. § 841(a)(1).

had ten kilograms of cocaine for sale at $32,000 per kilogram. Rivera said that he did not have the money, but that he had made an arrangement with Boichoit for the appellant to "front" the ten kilograms to him. At first appellant refused, but when the agents began walking away appellant immediately followed them and said "okay." Appellant then asked for the agents' car keys so that Fernando could take the car and pick up the cocaine. The agents remembered that they had radios in their car. They told appellant that they had to deal some cocaine and left the scene for approximately fifteen minutes. When they returned, Fernando left with the agents' car and the agents got into appellant's car. Appellant drove to another shopping mall. After approximately forty-five minutes, appellant left to find Fernando. Appellant returned with the keys to the agents' car which he gave to them, advising them that the merchandise was in the trunk of the car. After driving away, the agents stopped, opened the trunk, and found a bag containing ten kilograms of cocaine.

The agents and appellant had agreed to meet the next day so that the agents could pay appellant the $320,000 for the cocaine. They met at nine o'clock a.m. The agents said that they did not have the money then, but that they would be back around noon with the money they owed plus enough for ten more kilograms of cocaine. When the agents returned to the mall at noon, no one was there to meet them. Agent Rivera called Boichoit who informed him that "the man" had gotten scared and that he would talk to his "main man," his boss, and get back to Rivera.

Agents Rivera and Aguilar next met appellant on June 2, 1983, at a shopping mall. Rudy also attended this meeting. Rivera told appellant that he had a million dollars in the trunk of his car and that he needed twenty more kilograms of cocaine. Appellant stated he would not give Rivera any more cocaine until he received $320,000 for the other ten kilograms. At that time, Rivera gave the arrest signal and the

agents, the informant, and appellant were arrested.

Appellant's defense was that he did not know that the business deal he was entering into with the agents involved cocaine. Rather, he thought that he was assisting in the export of Chevrolet automobiles to Colombia. Appellant testified as to the details of this arrangement as follows:

The deal was proposed by Boichoit. Boichoit subsequently introduced appellant to Rudy, the informant, who worked at a car dealership. Appellant testified that Rudy told him that he would make a lot of money in the car business and gave him his card. The card indicated that Rudy worked at Tropical Chevrolet. At a later meeting, Rudy told appellant to meet him on May 25th to receive money to turn in to the car dealership. On May 25, 1983, appellant met with Rudy at nine o'clock a.m. at Tropical Chevrolet. Appellant was told to go to a certain shopping center at eleven o'clock a.m. At the shopping center, Rudy introduced appellant to Fernando, a mechanic at Tropical Chevrolet, and the agents. Appellant expected to meet the people who were going to give him money to deliver to Tropical Chevrolet. After talking to the people for about five minutes, appellant gave some car keys to Fernando. They agreed to meet an hour later at another shopping center where appellant thought he would get the money for the automobile. Appellant drove the agents to this second shopping center. After the meeting at the second shopping center, appellant dropped Fernando off at Tropical Chevrolet. Fernando told him that he should meet with the agents the following morning to receive the money. When the agents and appellant met the next day, Rivera asked appellant for cocaine. After appellant told them that he did not know anything about drugs, the agents left. Appellant subsequently called Rudy at Tropical Chevrolet and told him that he did not want to be "implicated in anything" or to "deal with anything." Appellant testified that he had decided not to do business with Rivera and Aguilar, but that he met with them on June 2, 1983 because he had received ten or twelve calls

threatening his life and the lives of his family members. The caller identified himself as Rudy.

## II. *Speedy Trial Act Violation*

The Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, mandates that a trial commence within seventy days after the date defendant appeared before a judicial officer or the date of the indictment, whichever occurs later. Section 3161(h) excludes from this seventy-day period certain specific delays including not over thirty days for ruling on any pre-trial motion made by the defendant. In addition, section 3161(h)(8)(A) excludes any period of delay resulting from a continuance granted at the request of either party or the trial judge, "if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." The court must set forth either orally or in writing its reasons for making this finding. 18 U.S.C. § 3161(h)(8)(A). No such continuance shall be granted because of general congestion of the court's calendar, or lack of diligent preparation or failure to obtain witnesses on the part of the attorney for the government. 18 U.S.C. § 3161(h)(8)(C). Under § 3162(a)(2), the sanction for failing to bring the defendant to trial within the time limits of the Act is dismissal of the indictment upon motion of the defendant. The defendant, however, must make this motion prior to trial or entry of a plea of guilty or nolo contendere, or the right to dismissal is waived. 18 U.S.C. § 3162(a)(2).

 In the present case, it is not disputed that the time for computing the seventy-day period began on June 11, 1983, the day following the indictment. The trial began on September 19, 1983. The following periods were excluded:

August 1–9: Counsel for defendant was unavailable due to another trial, as indicated by letter from counsel.

August 22–26: Motion of defendant for bond reduction.

September 9–14: Motion of defendant for continuance.

September 14–19: Motion of defendant for continuance.

The above excluded periods reduced the time below the 70 day level. Appellant, however, claims the judge erred in not charging the last five days (September 14–19) to the government.[4] Although defendant argued before the trial court that this continuance should be charged to the government, defendant did not move for dismissal under the Speedy Trial Act. Section 3162(a)(2) explicitly states that "[f]ailure of the defendant to move for dismissal prior to trial ... shall constitute a waiver of the right to dismissal under this section." Thus, defendant waived his right to the sanction of dismissal under the Speedy Trial Act. *See United States v. Daly*, 716 F.2d 1499, 1506 (9th Cir.1983), *cert. dismissed,* ―― U.S. ――, 104 S.Ct. 1456, 79 L.Ed.2d 773 (1984); *United States v. Tercero*, 640 F.2d 190, 195 (9th Cir.1980), *cert. denied*, 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981); *United States v. Little*, 567 F.2d 346, 349 (8th Cir.1977), *cert. denied*, 435 U.S. 969, 98 S.Ct. 1608, 56 L.Ed.2d 60 (1978).[5]

## III. *Confidential Informant*

Although appellant knew that the confidential informant's name was Rudy Bouchouston, appellant was unable to locate him. Following jury selection, appellant

---

**4.** Appellant argued that this period should be charged to the government because the continuance was necessitated by the government's delay in providing discovery pursuant to Fed.R. Crim.P. 16.

**5.** Appellant contends that the hearing before the trial court to determine against whom the last five day continuance should be charged was, for all intents and purposes, a motion for violation of the Speedy Trial Act, and that a further motion for dismissal would have been futile. However, a defendant moving for dismissal under the Speedy Trial Act will often be in the position of having lost in the trial court regarding what time is properly excludable under the Act. Nevertheless, the Act mandates that the defendant must move for dismissal, or his or her right to dismissal is waived.

moved to have the court order the government to produce the informant. The government strenuously opposed this motion. The court held an *in camera* hearing on the matter and declined to compel disclosure. Appellant renewed his motion for production twice, the second time being at the close of appellant's case, after appellant had testified. The trial court again ruled against appellant stating:

> THE COURT: Mr. Takiff [defense counsel], I am going to deny that motion, after hearing the defendant testify as to the acts of the parties in this case. I didn't find that the defendant's testimony was credible.
>
> I consider the identity of the informant and the damage that would do, based on the in camera affidavit that I received, would do more harm than my allowing or requiring the Government to produce the informant, based on the testimony I have heard in this case.

Appellant contends that by refusing to compel disclosure, the trial court violated his sixth amendment right to call and to cross-examine witnesses. Specifically, appellant claims that it was important for him to call the confidential informant because the informant was the only person who could corroborate appellant's story that appellant believed the transaction concerned cars, not cocaine.[6] Appellant also claims that the government used the confidential informant as a phantom witness against him through the government agents' testimony about what the confidential informant did and said, and through the introduction of a tape with conversations in which the confidential informant participated. Thus, appellant claims, the nonproduction of the informant constituted reversible error. We disagree.

■ The seminal case on the government's privilege not to disclose the identity of a confidential informant is *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). In *Roviaro*, the Court set forth a balancing test for determining when disclosure is required. This test evaluates "the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62, 77 S.Ct. at 629.[7] Subsequent case law has focused the inquiry on three factors: the extent of the informant's participation in the criminal activity, the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant, and the government's interest in nondisclosure. *See, e.g., United States v. Kerris*, 748 F.2d 610 (11th Cir. 1984); *United States v. Diaz*, 655 F.2d 580 (5th Cir. Unit B 1981), *cert. denied*, 455 U.S. 910, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982);[8] *United States v. Ayala*, 643 F.2d 244 (5th Cir. Unit A 1981). The government's interest may be proven by showing that disclosure might endanger the informant or other investigations. *See, e.g., Ayala*, 643 F.2d at 247.

Appellant correctly points out that the present case does not involve a request to obtain the identity of the informant because the informant's name is already

---

**6.** Appellant claims that both Boichoit and the confidential informant told him that the deal concerned cars. Boichoit is presently a fugitive.

**7.** The Supreme Court has indicated that an *in camera* hearing is one way to aid the trial court in its application of the *Roviaro* test. *Alderman v. United States*, 394 U.S. 165, 182 n. 14, 89 S.Ct. 961, 971 n. 14, 22 L.Ed.2d 176 (1969). This method has been employed in numerous circumstances. *See, e.g., United States v. Fischer*, 531 F.2d 783 (5th Cir.1976); *United States v. Freund*, 525 F.2d 873 (5th Cir.), *cert. denied*, 426 U.S. 923, 96 S.Ct. 2631, 49 L.Ed.2d 377 (1976). Such an *in camera* hearing, however, is not always required, *United States v. Kerris*, 748

F.2d 610, 614 (11th Cir.1984); *United States v. Alexander*, 559 F.2d 1339, 1344 (5th Cir.1977), *cert. denied*, 434 U.S. 1078, 98 S.Ct. 1271, 55 L.Ed.2d 785 (1978), but depends upon whether the trial court has the information necessary to determine if disclosure of the informant's identity is required without holding an *in camera* hearing.

**8.** The Eleventh Circuit, in *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982), adopted as precedent decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981.

known. *See United States v. Melchor Moreno,* 543 F.2d 1175 (5th Cir.1976), *on reh'g from* 536 F.2d 1042 (5th Cir.1976).[9] As stated in *Roviaro,* "once the identity of an informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable." 353 U.S. at 60, 77 S.Ct. at 627. This statement, however, must not be read out of context. The Court explained that "[t]he scope of the privilege is limited by its underlying purpose." *Id.* "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id.* at 59, 77 S.Ct. at 627.

Here, although the informant's name is known, he is currently protected from "those who would have cause to resent the communication" because they cannot locate him. Thus, the present case is similar to numerous other cases in which the confidential informant introduced the defendant to the government agents or witnessed the transaction. *See, e.g., United States v. Kerris,* 748 F.2d 610 (11th Cir.1984); *United States v. Diaz,* 655 F.2d 580 (5th Cir. Unit B 1981), *cert. denied,* 455 U.S. 910,

102 S.Ct. 1257, 71 L.Ed.2d 448 (1982); *United States v. Ayala,* 643 F.2d 244 (5th Cir. Unit A 1981). In these cases, the defendant could recognize the confidential informant. The only difference here is that the confidential informant told appellant his name. Appellant admitted at oral argument that he does not even know if he has the confidential informant's correct name. The *Roviaro* Court did not intend for the existence of the government's privilege to depend upon the fortuity of whether or not the confidential informant introduced himself or herself to the defendant. The former Fifth Circuit recognized that merely because the defendant knows the informant's name, that does not mean there is no general interest in maintaining the informant's confidentiality. *See United States v. Hughes,* 658 F.2d 317, 321 (5th Cir. Unit B 1981), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982); *United States v. Bower,* 575 F.2d 499, 503 (5th Cir.), *cert. denied,* 439 U.S. 983, 99 S.Ct. 572, 58 L.Ed.2d 654 (1978).[10] As recently stated by the Fifth Circuit in *United States v. Aguirre Aguirre,* 716 F.2d 293 (5th Cir.1983):

Although the confidential informant's privilege no longer exists when the informant is known to the defendant "[t]he need for the informant's safety, the avoidance of jeopardizing other opera-

**9.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**10.** The present case is distinguishable from *United States v. Godkins,* 527 F.2d 1321 (5th Cir.1976), in which the former Fifth Circuit reversed a trial court that forbade defendant, on pain of contempt, from producing the alleged informant as a witness at trial. The *Godkins* court stated:

We have found no case which authorizes a trial court to restrict the right of an accused person to subpoena any witness already known to him to give relevant testimony simply because by questioning such witness he may be uncovered as an informer.

*Id.* at 1326. In a case in which the defendant can locate the informant, it is difficult to see what possible protection to the informant's safety or the success of other governmental opera-

tions could be gained by not allowing the informant to testify. This is inapposite to a case, such as the one before us, in which only a name is known and the safety of the informant and future operations remains intact. Although we note that the court below referred to "allowing or requiring" disclosure, defense counsel explicitly stated he did not know where the informant was, but that if he did, he interpreted the court's actions as not preventing him from subpoenaing the informant.

The instant case is also distinguishable from *United States v. Melchor Moreno,* 543 F.2d 1175 (5th Cir.1976), *on reh'g from* 536 F.2d 1042 (5th Cir.1976), in which the court defined knowing the informant's identity as knowing his or her name. This comment was made in reference to *Godkins* and, thus, contemplates a situation in which the defendant knows an accurate name that enables defendant to either find the informant or to impair his or her usefulness in future investigations.

tions, or the defendant's ability to locate the informant himself, for example, may justify nondisclosure of the informant's address." *United States v. Fischel*, 686 F.2d 1082, 1092 (5th Cir.1982). The government, however, must set forth with particularity its reasons for nondisclosure of the informant's whereabouts. *Id.*

*Id.* at 300.[11]

We agree with the Fifth Circuit that the first step in deciding whether disclosure is required is determining whether the government has a valid reason for nondisclosure. In this sense, the inquiry is analogous to that made in *Roviaro* because the ultimate aim is to determine whether the public interest in law enforcement would be furthered by nondisclosure. The government's need, however, is not dispositive. Rather, the court must also take into consideration the defendant's need for disclosure as set out in *Roviaro* and its progeny. This is so because "[s]urely the public's interest in effective law enforcement is no greater in a situation in which the informant's identity is known and the confidential informant's privilege does not exist [than in a case where the identity is not known]." *Aguirre Aguirre*, 716 F.2d at 300.

In the present case, the trial court held an *in camera* hearing in order to consider the government's need for concealment and defense counsel's need for production.[12] The court determined that the government had made a sufficient showing of the need for nondisclosure and that appellant had failed to demonstrate that his need for disclosure outweighed the government's interest. We have reviewed the *in camera* hearing, and determine that the trial court acted within its discretion.

In evaluating the appellant's need for the informant's testimony, we first look to the extent of the informant's participation in the criminal activity. We do not find that the informant played a pivotal role in the drug transactions with respect to the appellant's participation.[13] The informant merely introduced appellant to the agents and then observed part of the criminal activity. This level of participation does not mandate disclosure. *See, Kerris*, 748 F.2d at 614. We also find that the informant was not used as a phantom witness against appellant. The tapes involving phone conversations with the informant were struck from the record.[14] Appellant also notes several references to the informant in the record. These references, however, were made in response to questions by defense counsel.

The second factor we must consider is the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant. As we stated in *Kerris:*

> Mere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure. [*United States v.*] *Gonzales* [606 F.2d 70, 75 (5th Cir.1979)]. The defendant must show that the informant's testimony would significantly aid in establishing an asserted defense. *Diaz, supra,* 655 F.2d at 588.

---

**11.** *Aguirre Aguirre* is similar to the case at bar. The informant in *Aguirre Aguirre* had as much or more involvement in the transaction as Rudy did here: he arranged the initial contact between the government agent and the defendant; he made phone calls about the deal; and he delivered drugs and money. The defendant knew the informant's name, Nito, but could not locate him. Defendant submitted a discovery request for the "name, identity and whereabouts of any informants." 716 F.2d at 300.

**12.** The court listened to each side separately, and the record of this *in camera* hearing is sealed.

**13.** We note that the informant had a more sustained relationship with coconspirator Boichoit. Appellant, however, does not claim that Boichoit was not involved in criminal activity, but rather, that Boichoit and the confidential informant tricked appellant into participating in the criminal activity. Thus, we need not reach the question of what the informant's level of participation was with respect to Boichoit.

**14.** *See* section IV, *infra.*

748 F.2d at 614. Appellant claims that the informant's testimony would support his defense that he was under the impression that the deal concerned cars, not cocaine. Appellant correctly contends that the ultimate question of the appellant's credibility was a matter to be decided by the jury. Nevertheless, in the case of a confidential informant, the trial court must determine whether the defendant's claim as to the helpfulness of the informant's testimony is "mere conjecture." In the present case, appellant produced no evidence corroborating his incredible story. Furthermore, even if the informant had corroborated appellant's claim that he thought the deal involved automobiles, the overwhelming evidence at trial demonstrated that appellant knew the merchandise was cocaine, certainly by the final meeting if not earlier. The trial court correctly determined that the appellant had not supported his claim that the informant's testimony would prove helpful to his defense. Thus, the court correctly denied appellant's motion for production of the confidential informant.

IV. *Refusal to Declare a Mistrial After Striking Testimony*

■ Over defendant's objection, the trial court permitted the government to play a recording of a telephone conversation involving coconspirator Boichoit, the confidential informant, and government agent Rivera. Because portions of the tape were in French, the judge allowed the jurors to follow along with a transcript of an English translation of the tape.[15] The next day, however, the court granted defendant's motion to exclude the tape and transcript. Defendant moved for a mistrial. The court denied defendant's motion, explaining that the tape did not deal directly with the defendant. Instead, the court gave the jury a cautionary instruction to disregard the recording and the transcript. The court also individually polled each jur-

or to ascertain whether he or she was capable of disregarding the recording. Each juror replied affirmatively.

In *United States v. Slocum*, 708 F.2d 587 (11th Cir.1983), we stated:

An instruction to disregard evidence withdrawn from the jury is sufficient grounds for an appellate court to uphold a trial court's denial of a motion for mistrial unless the evidence is so highly prejudicial as to be incurable by the trial court's admonition. *United States v. Walker*, 621 F.2d 163, 168 (5th Cir.1980), *cert. denied*, 450 U.S. 1000, 101 S.Ct. 1707, 68 L.Ed.2d 202 (1981); *United States v. Klein*, 546 F.2d 1259, 1263 (5th Cir.1977). Such a level of prejudicial effect exists where there is "a significant possibility ... that ... the stricken statement had a substantial impact upon the verdict of the jury." *United States v. Arenas-Granada*, 487 F.2d 858, 859 (5th Cir.1973).

*Id.* at 598. Appellant does not show any specific way in which he was prejudiced by the jury hearing the tape and reading the transcript; he merely asserts that "these tape recorded conversations were the predicate for establishing that Loic Boichoit had agreed to furnish Agent Rivera cocaine through the informant." The defense in this case, however, is not that Boichoit and the confidential informant were not dealing in cocaine, but rather that defendant was not aware that the deal between Boichoit and the informant concerned cocaine. Moreover, not only did defendant not participate in the conversations, he was not even mentioned in them. Thus, we find that the trial court eliminated any potential prejudice caused by the introduction of the tape and transcript and did not err in refusing to grant a mistrial.

V. *Jury Instructions on Conspiracy Charge*

■ The trial court instructed the jury on the law of conspiracy as follows:

---

**15.** The tape and transcript were admitted based upon Agent Collier's testimony that he had observed the tape being made and that the translation was accurate. Collier, however, had not done the translation himself. Defendant challenged the admission of this evidence on two

grounds: first, defendant challenged the foundation for the translation by challenging Collier's ability as an expert in French; second, defendant argued that there was no evidence that the confidential informant had consented to the monitoring of the conversation.

What the evidence in this case must show beyond a reasonable doubt is that two or more persons in some way or manner, positively or tacitly, came to a mutual understanding *to try to accomplish* a common and unlawful plan, as charged in the indictment.

(emphasis added). Appellant objects to the phrase "to try to" claiming that it indicates an attempt to conspire and that such an attempt is not a crime. This contention has no merit.

Appellant cites *United States v. Solomon*, 686 F.2d 863 (11th Cir.1982) to support his claim. Although the charge in *Solomon* used the language appellant favors, this language was not placed in contention.[16] The *Solomon* court did state that "jury instructions must be taken in context, as part of a whole, and interpreted with common sense." *Id.* at 875. This admonition is useful here. A person may be guilty of conspiring to commit an offense although incapable of actually committing that offense. *See United States v. Rabinowich*, 238 U.S. 78, 86, 35 S.Ct. 682, 684, 59 L.Ed. 1211 (1915). The language of the challenged instruction thus reflects that it is sufficient to agree to try to commit an illegal act even though one may not be capable of actually committing it. *See also United States v. Albert*, 675 F.2d 712, 716 (5th Cir.1982).[17]

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

**16.** Rather, the defendant in *Solomon* claimed (1) that the use of the words "one or more laws" and "included" in the jury charge impermissibly left the jury to speculate about what crime was being submitted to it to be resolved; (2) that the court failed to discuss the elements of two of the four offenses; and (3) that the court impermissibly refused to charge the jury that the relationship of buying and selling does not prove a conspiracy. The court found that none of these contentions had merit. 686 F.2d at 875.

**17.** We also note that the instruction was taken directly from the *Fifth Circuit Pattern Jury Instructions* (1979) pp. 61, 186.