[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 5, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15834
Non-Argument Calendar

_____

D. C. Docket No. 06-20791-CR-FAM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FERNANDO GIRALDO,
a.k.a. Limon,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(November 5, 2008)**

Before CARNES, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Defendant Fernando Giraldo was indicted, together with 10 co-defendants,

in a multi-count indictment involving drug trafficking and money laundering offenses. Giraldo was found guilty of one count of conspiracy to launder money (Count 4), in violation of 18 U.S.C. § 1956(h), and one count of laundering money (Count 18), in violation of 18 U.S.C. § 1956(a)(1)(B)(i).[1] He was sentenced to 96 months imprisonment and three years of supervised release. On appeal, Giraldo argues that the district court erred at trial by declining to order the government to disclose the identity of its confidential informant. Giraldo also argues that the district court erred at sentencing in (1) denying Giraldo's motion for a continuance to the procure the testimony of his brother, (2) excluding the proposed testimony of a private investigator, and (3) applying a preponderance of the evidence standard to the proof required to calculate Giraldo's guideline sentence. For the reasons set forth below, we affirm.

## I. Facts

This case stems from the drug activities of a cocaine distribution ring named the "Tocayo Organization." This organization was headed by David Palacios-Beltran (a.k.a. "Tocayo"), Luis Garcia Manso Martinez ("Manso"), and Jean

---

[1] Giraldo was charged with two counts of money laundering. Count 17 involved a $15,000 transaction that took place on September 26, 2006 and Count 18 involved a $50,000 transaction that took place on October 17, 2006. The jury delivered guilty verdicts as to Counts 4 and 18, but could not reach a unanimous verdict as to Count 17. The government thereafter voluntarily dismissed Count 17.

Demestry Moise. The Tacoyo Organization was infiltrated by City of Sunrise

Police Officer Eddy Marill, who was detailed to a United States Drug Enforcement

Agency ("DEA") task force. Marill, posing as a drug trafficker and money

launderer, was introduced to members of the organization in 2004 by a confidential

informant named "Jorge."[2] Marill, in his undercover capacity, met with the heads

of the Tocayo Organization several times during the course of 2006, wherein the

men attempted to broker a deal involving the importation of 500 kilograms of

cocaine from Haiti to the United States. During the course of the negotiation

process, Marill was sometimes instructed to engage in "money pickup[s] or

dropoff[s]" on behalf of the Tocayo Organization.

At trial, Marill testified that on September 26, 2006, Palacios-Beltran gave

Marill a telephone number for a money courier in the South Florida area. Palacios-

Beltran instructed Marill to ask for "Limon" and to deliver $15,000 to this "trusted

individual of the organization." Marill called the telephone number,[3] addressed the

person on the other end of the phone line as Limon, and the two set up a meeting in

a Burger King parking lot. Marill met the money courier, later identified as

Giraldo, and delivered to him $15,000 concealed in a peanut can. During the

_____

[2] At trial, Giraldo moved for disclosure of Jorge's full name and address. This motion, discussed infra, was denied.

[3] It is undisputed that this is Giraldo's cellular telephone number – the only telephone over which Giraldo ever communicated with Marill.

course of the money exchange, Giraldo indicated that he was unable to get in touch with Tocayo via fax or internet. Thereafter, Giraldo followed Marill to a restaurant, remaining in cell phone contact during the drive.

On October 17, 2006, Palacios-Beltran again instructed Marill to call Limon and deliver $50,000. Following the telephone call, Marill briefly met Giraldo in a parking lot and Giraldo followed Marill to a warehouse. Once there, Giraldo expressed concerns about being followed by police and indicated that he was going to get a prepaid cell phone that could be obtained without having to give his name, presumably out of concern for wiretapping. At the warehouse, the $50,000 was counted and transferred to Giraldo.

Manso was arrested for drug and money laundering activities. He later pleaded guilty pursuant to a cooperation agreement. Five months before trial, DEA agents showed Manso a series of photographs. Among those photographs was a picture of Giraldo, which Manso identified as a man to whom he delivered $600,000 in Miami on Memorial Day 2006. At trial, the photograph was not introduced into evidence, but Manso did positively identify Giraldo in court. On cross-examination, Manso was asked how sure he was that Giraldo was the man that he met in Miami, to which he responded, "to the degree of 85 to 90 percent."

Giraldo did not dispute that he twice picked up money from Marill. The

4

defense's theory, rather, was that Giraldo was not the experienced money launderer named Limon, but rather a "money changer."[4] On September 25, 2007, the jury returned verdicts against Giraldo on Counts 4 and 18. Sentencing was scheduled for December 4, 2007. Seven days before sentencing was to commence, Giraldo filed a motion for a continuance, which was again renewed at sentencing, requesting additional time so that his brother from Colombia could be present to testify at the sentencing hearing. This motion was twice denied.

At the sentencing hearing, defense counsel objected to the terms of the Presentence Investigation Report ("PSI"). The PSI calculated the base offense level at 22, holding Giraldo accountable for $665,000 in laundered funds. This included the two events for which Giraldo was charged, as well as the $600,000 Manso testified were transferred Memorial Day 2006. The district court denied the objections, finding that the prosecution proved by a preponderance of the evidence that Giraldo did in fact launder all $665,000 in funds.

Defense counsel also objected to the addition of 6 levels because Giraldo knew or believed the source of the laundered funds was from drug trafficking. Giraldo sought to call a private investigator who allegedly had been told by one of

---

[4] This term is used in Giraldo's briefs, but never defined. Black's Law Dictionary broadly defines a money changer as "[o]ne whose primary business is exchanging currencies." Black's Law Dictionary 1022 (7th ed. 1999).

Giraldo's friends in Colombia that Giraldo picked up the money as a favor to him, not knowing that drugs were involved with the transactions. The district court refused to admit the testimony, finding that it would be improper because the investigator's proposed testimony was hearsay without indicia of reliability.

After applying a 2 level minor role reduction, the district court reached a guideline range of 78-97 months of imprisonment. The district judge imposed a sentence of 96 months, plus 3 years supervised release.

## II.  Law & Analysis

### A.  Denial of the Motion to Compel Disclosure of the Confidential Informant

We review the denial of a motion to disclose the identity of a confidential informant for an abuse of discretion. United States v. Gutierrez, 931 F.2d 1482, 1490 (11th Cir. 1991). The Supreme Court has recognized that although the government generally has the privilege to withhold the identity of its confidential sources, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Roviaro v. United States, 353 U.S. 53, 60 (1957). This requires balancing "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Id. at 62. This court has focused the inquiry by relying

6

principally upon three considerations: (1) the extent of the informant's participation in the criminal activity; (2) the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant; and (3) the government's interest in nondisclosure. United States v. Tenorio-Angel, 756 F.2d 1505, 1509 (11th Cir. 1985).

The evidence adduced at trial of the confidential informant's participation in the criminal activity was minimal. The evidence shows that the informant, Jorge, received a call from Palacios-Beltran giving him Limon's telephone number and instructing him that a delivery of $15,000 was to be made. Jorge in turn gave the telephone number to Marill to execute the delivery. This was the extent of Jorge's involvement. In Tenorio-Angel, this court held that the informant did not play a pivotal role where he "merely introduced appellant to the agents and then observed part of the criminal activity." Id. at 1511. Because Jorge merely facilitated Marill's entry into the scheme, Jorge was not a major participant. This weighs against disclosure.

As to the directness, this court has held that, "[m]ere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure. The defendant must show that the informant's testimony would significantly aid in establishing an asserted defense." Id. (internal

7

citations omitted).  Giraldo argues in a conclusory manner that Jorge will be able to testify that Limon is not Giraldo.  It is not clear from the record, however, that Jorge ever met Limon, or knew whether Limon and Giraldo were the same person.[5]  It is therefore not clear that Jorge could have offered helpful testimony as to Limon's appearance or identity.

Because the defendant failed to establish the importance of the informant's testimony, it is unnecessary to consider the government's interest in nondisclosure.  See United States v. Diaz, 655 F.2d 580, 588-89 (5th Cir. 1981)[6] (declining to consider the third factor when appellant did not carry her burden).  We therefore conclude that the district court did not abuse its discretion in denying Giraldo's motion to compel the government to disclose the identity of the informant.

## B.  Alleged Sentencing Errors

### i.  Denial of the Motion to Continue Sentencing

We review a district court's denial of a motion to continue sentencing for an abuse of discretion.  United States v. Douglas, 489 F.3d 1117, 1128 (11th Cir. 2007), cert. denied, __ U.S. __, 128 S. Ct. 1875 (2008).  When a defendant moves

---

[5] During cross-examination of Moise, defense counsel asked him about Jorge.  Moise indicated that Jorge was a friend of Palacios-Beltran and that he was unsure of whether Jorge knew Limon.

[6] Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

to continue the sentencing hearing and the district court denies the motion, the defendant must demonstrate that the denial "produced specific substantial prejudice." United States v. Smith, 757 F.2d 1161, 1166 (11th Cir. 1985). In determining whether the defendant has satisfied his burden, we consider four factors:

> (1) the diligence of the defense in interviewing the witness and procuring his testimony; (2) the probability of obtaining the testimony within a reasonable time; (3) the specificity with which the defense was able to describe the witness's expected knowledge or testimony; and (4) the degree to which such testimony was expected to be favorable to the accused, and the unique or cumulative nature of the testimony.

Douglas, 489 F.3d at 1128.

Although there was a period of more than two months between the jury verdict and the sentencing date, Giraldo did not file his motion for a continuance to procure the testimony of his brother until seven days before sentencing. At no time did Giraldo offer any evidence of diligence to account for his inability to obtain this witness before sentencing. Giraldo asserts, without supporting evidence, that his brother could testify that Giraldo "became involved in the transactions on behalf of an old family friend who was in the local textile business." The district court did not abuse its discretion in finding a continuance was not warranted under these circumstances.

9

## ii. Exclusion of the Investigator's Testimony

We review claims of constitutional challenges at sentencing <u>de novo</u>. <u>United States v. Cantellano</u>, 430 F.3d 1142, 1144 (11th Cir. 2005). A defendant has the right to rebut factors that might enhance his sentence. <u>United States v. Castellanos</u>, 904 F.2d 1490, 1495 (11th Cir. 1990). <u>See</u> U.S. Sentencing Guidelines Manual § 6A1.3 (2007).

Giraldo sought to introduce the testimony of an investigator who overheard one-half of a conversation between Giraldo and an unnamed friend in Colombia. Giraldo never attempted to call the friend, the alleged source of the knowledge, either at trial or sentencing. The district court declined to hear the investigator's testimony because it did not carry sufficient indicia of reliability, especially given that the participants in the alleged conversation could not be examined. Clearly, the proposed evidence was uncorroborated hearsay. <u>See</u> Fed. R. Evid. 201 (defining hearsay as, "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). The district court therefore did not err in excluding this insufficiently reliable evidence.

## iii. Applying Preponderance of the Evidence to Sentencing Considerations

We review a district court's application of the Sentencing Guidelines <u>de</u>

10

novo and its factual findings for clear error. United States v. Torrealba, 339 F.3d 1238, 1242 (11th Cir. 2003). In determining whether to enhance a defendant's sentence, the district court "may consider any information, (including hearsay), regardless of its admissibility at trial." United States v. Baker, 432 F.3d 1189, 1253 (11th Cir. 2005). "[I]t is the settled law of this circuit that at sentencing, 'a federal defendant's due process rights are . . . satisfied by the preponderance of the evidence standard.'" United States v. Jackson, 57 F.3d 1012, 1019 (11th Cir. 1995) (quoting United States v. Terzado-Madruga, 897 F.2d 1099, 1125 (11th Cir. 1990)).

The district court made adequate findings to support its holding that Giraldo's involvement in the $600,000 Memorial Day transaction was proven by a preponderance of the evidence. The district court found Manso's testimony as to Giraldo's involvement in the transfer to be credible. The court noted that Manso's admission that he was only 85 to 90 percent sure that Giraldo was the man to whom he gave the $600,000, "actually adds to his credibility. When someone says that as opposed to being, as defense lawyers would say, a lying informant who would say anything to get his advantage, [that is more credible.]" In any event, the district court noted that the Manso's testimony established Giraldo's guilt "certainly by a preponderance of the evidence if not clear and convincing." The

11

court even noted that this evidence could establish proof "beyond a reasonable doubt." Thus, any alleged error was harmless. See Jackson, 57 F.3d at 1019 ("the district court did acknowledge that the preponderance of the evidence standard was applicable, but went on to find that even the beyond a reasonable doubt standard was satisfied . . . [the defendant] got the benefit of the higher standard of proof").

**AFFIRMED.**