[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-10514
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 12, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-00244-CR-T-24-MAP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN RODRIGUEZ,
a.k.a. Juan Rodriguez-Acevedo,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 12, 2009)

Before CARNES, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Juan Rodriguez appeals his conviction for possession with intent to distribute 500 grams or more of methamphetamine. 18 U.S.C. § 2; 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii). Rodriguez challenges the denial of his motions to suppress, to reveal the identity of a confidential informant, and for a new trial. We affirm.

## I. BACKGROUND

On March 21, 2007, Detective Keith Mease of the Polk County Sheriff's Office received a call from a known reliable informant. The informant stated that he knew a person, Carlos, who "wanted to supply information" regarding "two pounds of methamphetamine." Detectives Mease and Clark met with and solicited personal information from Carlos, including his name, date of birth, Social Security number, and criminal history. Carlos told the officers that Jorge Funez had offered to sell two pounds of methamphetamine, and Carlos asked for money to arrange the sale. Carlos and Detective Mease exchanged phone numbers, and Detective Mease later verified Carlos's personal information.

Two days later, Carlos called Detective Mease with information that Funez was ready to deliver the methamphetamine. Detectives Mease and Clark met with Carlos inside Mease's car to arrange the transaction, and Carlos directed Detective Mease to Funez's house. Because there were no vehicles in Funez's driveway, the

2

officers parked at a nearby church. Carlos called Funez and the men spoke in Spanish. Although Detective Mease understood a few words of the conversation, Carlos explained that Funez had asked to delay the transaction about an hour. After Carlos called Funez a second time, Carlos explained to the officers that Funez could supply only a pound and a half of methamphetamine. The officers agreed to the smaller amount, and Carlos arranged to meet Funez at a gas station. Detectives Mease and Clark searched Carlos and his vehicle for contraband, and Carlos drove to the gas station while the officers waited across the street.

After several minutes, a black truck drove into the station, and Carlos walked to the driver's side door, where Funez was sitting. Carlos spoke briefly to the occupants of the truck and walked away, at which point the truck drove away in the direction of a safehouse where the officers planned to conduct a controlled buy of the drugs. As the truck drove away, Detective Mease received a call from Carlos. Carlos stated that he saw drugs under the passenger side floor mat and a gun between the seats of Rodriguez's truck. Concerned about the weapon, Detective Mease aborted the controlled buy and instructed officers to stop the truck. An unmarked police vehicle pulled in front of the truck and Deputy J.D. Maney followed behind in a second unmarked vehicle.

After it became apparent to officers that the occupants of the truck knew

3

about the surveillance, Deputy Maney flashed his blue lights and stopped the truck. At least one officer approached the truck with his gun drawn and stated in Spanish for the occupants to get out of the truck. Deputy Maney opened the driver's side door and grabbed Funez by the arm, at which point the deputy noticed a revolver tucked between the driver's seat and the center console. After Funez climbed out of the truck, Deputy Maney seized the weapon. The other occupants, including front passenger Rodriguez, were removed from the truck, patted down, and handcuffed, and Deputy Maney placed the revolver on top of the center console.

Detective Mease approached the truck and saw on the center console a plastic bag that contained "dirty" methamphetamine. An officer showed the detective a plastic container protruding from under the passenger side floor mat that contained methamphetamine. Officers searched the truck and discovered three additional bags of methamphetamine and an electronic scale.

Rodriguez moved the district court to reveal Carlos's actual identity. Rodriguez argued that he was entitled to question Carlos regarding his conversations with the police and his role in the drug transaction. The district court denied the motion on the ground that Rodriguez had not established a need for disclosure that outweighed the interest of the government to protect its confidential source. The district court ordered the government to make Carlos

4

available for an in camera hearing.

Later, Rodriguez moved to suppress the statements he made to the police and the evidence seized from his truck, and moved a second time for the court to reveal Carlos's identity. Rodriguez argued that the officers lacked probable cause to stop the truck or to arrest its occupants. Rodriguez also argued that Carlos was a "material witness" regarding the drug transaction and Rodriguez's lack of involvement. Rodriguez likened his situation to that in Roviaro v. United States, 353 U.S. 53, 77 S. Ct. 623 (1957), where the defendant was entitled to disclosure of the government informant to develop his defense of entrapment.

After a hearing, the district court denied Rodriguez's second motion to reveal Carlos's identity. The district court found that Carlos was "directly involved, if not pivotal" to the drug transaction and Detective Mease had observed the calls between Carlos and Funez. Rodriguez argued that he needed Carlos to corroborate his meetings and calls with Detective Mease and Funez, but the district court ruled that Rodriguez's "mere conjectur[e] or supposition about [the] possible relevancy of [Carlos's] testimony [was] not sufficient to warrant disclosure."

The district court also denied Rodriguez's motion to suppress. The court found that Carlos proved reliable because he participated in the drug transaction and he provided information "consistent and corroborative of" actions by Funez

5

that provided reasonable suspicion to further investigate the truck and its occupants. The district court also found that the officers were entitled to search the vehicle after they found the revolver and that discovery of the methamphetamine gave the officers probable cause to arrest the occupants and to search the truck. The district court ruled alternatively that the information provided to Detective Means about the drugs and gun provided probable cause to arrest the passengers.

After the district court denied the motion to suppress, Rodriguez renewed his motion to reveal Carlos's identity. The district court decided to interview Carlos in camera, and Rodriguez submitted questions for the interview. Rodriguez wanted to question Carlos about the parties to and contents of his telephone calls about the drug transaction, whether he was familiar with Rodriguez's truck, and Rodriguez's demeanor and reaction when they met at the gas station.

When the hearing concluded, the district court again denied Rodriguez's motion to reveal Carlos's identity. The district court found that other witnesses could testify regarding Rodriguez's involvement in the transaction and the interest of the government to protect its informant outweighed Rodriguez's need to learn Carlos's identity. Before trial, Funez pleaded guilty. After the government made a proffer of Funez's testimony, the court found it was consistent with Carlos's in

camera testimony.

At trial, the district court mentioned that Funez had testified inconsistently about with whom Carlos had spoken about the drugs, and the government offered to admit Carlos's in camera testimony to resolve the issue. The district court gave the parties a redacted copy of the transcript and warned Rodriguez that "the only issue that [he] would preserve with respect to <u>Roviaro</u> would be . . . the initial disclosure incident to the suppression hearing and your request that I conduct the in camera hearing, which I did, and the court's discretion to deny the motion based for the reasons articulated" earlier. After a discussion between Rodriguez and his attorney, Rodriguez agreed to the stipulation.

The court read the stipulated facts to the jury. The parties agreed that Carlos knew Funez, who had told Carlos that he had methamphetamine to sell, after which Carlos contacted Detective Mease; Carlos did not know, had not met, and never had a telephone conversation with Rodriguez; Carlos did not speak to Rodriguez at the gas station and "talked only with" Funez; Carlos asked Funez about the drugs; and Carlos "saw the front-seat passenger pick up a plastic container and lift it."

After the jury found Rodriguez guilty, he filed a motion for a new trial and a renewed motion for a judgment of acquittal. Rodriguez argued that he was entitled to a new trial because the government withheld information that Carlos was in a

7

holding cell in the courthouse, which would have affected Rodriguez's decision to renew his motion to reveal Carlos's identity rather than agree to the stipulation. Rodriguez asserted that the government was required to reveal why Carlos was incarcerated and if he had received favorable treatment in exchange for his testimony. Rodriguez also argued that the evidence offered at trial was insufficient to sustain his conviction.

The district court denied the motions. The court found that Carlos's "custodial status was not material to [Rodriguez's] guilt or innocence and was not exculpatory or favorable to him." The district court also found that Carlos's in camera testimony favored Rodriguez; impeaching Carlos would have undermined Rodriguez's defense; and Rodriguez and counsel made a "calculated decision" to use the stipulation. The court found that the evidence supported Rodriguez's conviction and sentenced him to 188 months of imprisonment.

## II. STANDARDS OF REVIEW

We apply two standards of review in this case. On denial of a motion to suppress, we review findings of fact for clear error and the application of law to those facts de novo. United States v. Ramirez, 476 F.3d 1231, 1235 (11th Cir. 2007). We construe all facts in the light most favorable to the government. Id. at 1235–36. We review the denial of a motion to disclose the identity of a

8

confidential informant for abuse of discretion. United States v. Gutierrez, 931 F.2d 1482, 1490 (11th Cir. 1991). We also review for abuse of discretion the denial of a motion for new trial. United States v. Perez-Oliveros, 479 F.3d 779, 782 (11th Cir.), cert. denied, 127 S. Ct. 2964 (2007).

## III. DISCUSSION

Rodriguez makes three arguments on appeal. He challenges the denial of his motions to suppress, to reveal the identity of Carlos, and for a new trial. We address the denial of each motion in turn.

*A. Officers Had Reasonable Suspicion To Stop Rodriguez's Truck and Probable Cause To Search the Truck and Arrest Rodriguez.*

Rodriguez challenges the stop and search of his vehicle. Rodriguez argues that officers did not have probable cause to stop the truck because Carlos was not a known informant and officers failed to corroborate the information Carlos provided. Rodriguez contends that, because the police approached the car with guns drawn and placed him in handcuffs, the officers were required to have probable cause to stop the vehicle. These arguments fail.

The officers had reasonable suspicion of criminal activity to detain the truck and investigate whether the truck contained contraband. A known reliable informant introduced Detective Mease and Carlos, after which Carlos provided personal information that the detective used to verify Carlos's background and

criminal history. The day of the drug transaction, Carlos remained with Detective Mease and provided real time information as circumstances changed regarding the time and location of the meeting and the amount of methamphetamine available for purchase. See United States v. Reyes, 792 F.2d 536, 539 (5th Cir. 1986) ("an informant's tip is buttressed [through] the fact that it is based on his own personal observation"). Detective Mease observed Carlos and assessed his credibility and demeanor as the transaction evolved. Carlos's knowledge and reliability, coupled with his financial interest in apprehension of the drugs, lended veracity to his report that there were drugs and a gun inside Rodriguez's truck. Detective Mease had reasonable suspicion to stop the vehicle. See Alabama v. White, 496 U.S. 325, 330–31, 110 S. Ct. 2412, 2416 (1990) (reasonable suspicion turns on the totality of the circumstances); United States v. Kent, 691 F.2d 1376, 1379–80 (11th Cir. 1982) (verification of known but untested tip through observation provided reasonable suspicion). Detective Mease was not required to verify independently the information that Carlos provided. See United States v. Brundidge, 170 F.3d 1350, 1353 (11th Cir. 1999).

The district court did not err when it denied Rodriguez's motion to suppress. The officers were entitled to approach the truck with guns drawn and to remove and handcuff its occupants based on their reasonable suspicion that

Rodriguez and the other occupants of the truck were armed. See United States v. Hastamorir, 881 F.2d 1551, 1556–57 (11th Cir. 1989). After Detective Mease saw the bag of methamphetamine on the center console, the officers had probable cause to arrest Rodriguez and his cohorts for their possession of the illegal substance and to search the vehicle for additional contraband. See United States v. Pantoja-Soto, 739 F.2d 1520, 1524 (11th Cir. 1984); United States v. Clark, 559 F.2d 420, 424 (5th Cir. 1977).

### B. The Government Was Not Required To Disclose the Identity of the Confidential Informant.

Rodriguez argues that the district court erred when it denied his motion to reveal Carlos's identity before trial, but we disagree. The government is not required to disclose the identity of an informant unless his identity or his communications with the government are "relevant and helpful" to the defendant or the information "is essential to a fair determination" of the case. Roviaro v. United States, 353 U.S. 53, 60–61, 77 S. Ct. 623, 628 (1957). This balancing test requires consideration of three factors: "'the extent of the informant's participation in the criminal activity, the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant, and the government's interest in nondisclosure.'" Gutierrez, 931 F.2d at 1490 (quoting United States v. Tenorio-Angel, 756 F.2d 1505, 1509 (11th Cir. 1985)).

11

The three factors that govern our review of this matter do not favor Rodriguez. First, Carlos's participation was significant, but this fact alone does not require disclosure. Although Carlos instigated the drug transaction, Detective Mease observed and was privy to most of the conversations between Carlos and Funez. Id. at 1490–91. Second, Rodriguez failed to prove that Carlos's testimony "'would significantly aid in establishing his defense.'" Id. at 1491 (quoting Tenorio-Angel, 756 F.2d at 1511). Rodriguez sought disclosure to impeach Detective Mease and to support his "mere presence" defense, but Detective Mease stated that Carlos had, if any, a momentary interaction with Rodriguez at the gas station and Carlos did not directly incriminate Rodriguez. Rodriguez was not entitled to learn Carlos's identity based on speculation that he might have observed something exculpatory during their brief meeting. Moreover, the district court interviewed Carlos in camera and verified that Carlos would testify consistent with Funez's expected testimony. See id. Third, the disclosure posed a danger to Carlos, would damage the relationship between the police and existing confidential informants, and would compromise an ongoing undercover investigation. See id. The district court did not abuse its discretion by denying Carlos's pretrial motion to disclose.

*C. Rodriguez Was Not Entitled to a New Trial.*

Rodriguez argues that the district court abused its discretion when it denied his motion for a new trial. Rodriguez argues that the government did not present sufficient evidence to support his conviction. Rodriguez also argues that the failure of the government to disclose that Carlos was in the courthouse violated his rights to discovery and cross-examination because he could have elicited information about Carlos's criminal history and custodial status. These arguments fail.

Sufficient evidence established Rodriguez's involvement in the criminal activity. See 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii). Drugs and drug paraphernalia were seen in plain view and concealed in various locations of Rodriguez's truck. Rodriguez admitted that he picked up the package of methamphetamine at his feet and showed it to Carlos, and Funez testified that he had bought drugs from Rodriguez in the past. Although Funez gave inconsistent accounts about his involvement, his testimony was not "unbelievable on its face," and its veracity was an issue for the jury to resolve. See United States v. Garcia, 405 F.3d 1260, 1270 (11th Cir. 2005). The evidence does not "preponderate heavily against the verdict, such that it [was] a miscarriage of justice [for the district court] to let the verdict stand." United States v. Martinez, 763 F.2d 1297,

1313 (11th Cir. 1985).

The government was not required to disclose to Rodriguez that Carlos was in the building or produce him for cross-examination. Rodriguez failed to prove that Carlos possessed information that was material and otherwise unavailable to him. See United States v. Hansen, 262 F.3d 1217, 1234 (11th Cir. 2001). Rodriguez failed to request that the court inquire about Carlos's criminal history and his relationship with the government during the in camera interview, and Rodriguez failed to question Detective Mease at trial about these matters. Rodriguez is unable to establish that evidence about these matters would have affected the outcome of his trial.

Rodriguez waived the right to cross-examine Carlos when he stipulated to Carlos's testimony. Rodriguez forfeited his motion to reveal so that he could introduce evidence that supported his "mere presence" defense and rebutted Funez's testimony that Rodriguez played an active role in the drug transaction. See United States v. Stephens, 609 F.2d 230, 232–33 (5th Cir. 1980). The district court did not abuse its discretion when it denied Rodriguez's motion for a new trial.

## IV. CONCLUSION

Rodriguez's conviction is **AFFIRMED.**