[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13208
Non-Argument Calendar
_____

D.C. Docket No. 2:11-cr-00057-MEF-CSC-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM PAUL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(May 20, 2013)

Before MARCUS, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

William Paul appeals his convictions and sentence of 53 months of

imprisonment for tax evasion, 26 U.S.C. § 7201, and willful failure to file a tax

return, id. § 7203.  Paul argues, for the first time, that the district court erred by failing sua sponte to dismiss his charge of violating section 7203 and by admitting an order of child support.  Paul also argues about the denial of his motions for a continuance; cumulative error; the sufficiency of the evidence; the enhancement of his sentence for obstruction of justice and using sophisticated means; and the reasonableness of his sentence.  We affirm.

Paul argues that the district court committed three errors that collectively denied him a fair trial, but his arguments about individual and cumulative error fail.  First, Paul argues, for the first time on appeal, that the district court should have dismissed sua sponte his charge under section 7203 because a violation "is not a crime" when IRS regulations provide monetary penalties, but we disagree.  The plain language of section 7203 provides that a violator "shall, in addition to other penalties . . . , be guilty of a misdemeanor."  26 U.S.C. § 7203.  Second, Paul argues that he was entitled to a third continuance after he decided to proceed pro se about two months before trial, but the district court did not abuse its discretion in denying Paul's motion.  The district court had twice continued Paul's trial at the request of a codefendant; discovery was complete several months before trial; Paul knew how to access the discovery; and Paul received an electronic copy of discovery materials from the government more than one month before trial.  Paul fails to explain how he was prejudiced by the "alleged inadequate opportunity to

2

prepare for trial," United States v. Graham, 643 F.3d 885, 893 (11th Cir. 2011) (internal quotation marks omitted), or "how additional time would have aided [his] defense," United States v. Davis, 967 F.2d 516, 519 (11th Cir. 1992), reh'g granted on other grounds, 30 F.3d 108 (11th Cir. 1994).  Third, Paul argues, also for the first time, that the district court erred by admitting an order of child support and then limiting his cross-examination on the matter, but the district court did not plainly err.  Paul invited any error by stating that he had "[n]o objection" to admitting the order into evidence, see United States v. Thayer, 204 F.3d 1352, 1355 (11th Cir. 2000), after which the district court eliminated the need for cross-examination by withdrawing the order from evidence sua sponte on the ground it was irrelevant, see United States v. Maxwell, 579 F.3d 1282, 1296 (11th Cir. 2009).  And the district court eradicated any potential prejudice against Paul by instructing the jury to disregard any testimony about or reference to the order.  See United States v. Tenorio-Angel, 756 F.2d 1505, 1512 (11th Cir. 1985).  Because Paul fails to identify any individual error, his argument about cumulative error fails.  See United States v. Waldon, 363 F.3d 1103, 1110 (11th Cir. 2004).

Paul argues that the government failed to prove that he violated the tax laws willfully, but the district court did not err by submitting this question to the jury and denying Paul's motion for a judgment of acquittal.  The government satisfied its burden to "prove that the law imposed a duty on [Paul], that [he] knew of this

3

duty, and that he voluntarily and intentionally violated that duty." Cheek v. United States, 498 U.S. 192, 201, 111 S. Ct. 604, 610 (1991).  The evidence supported the finding of the jury that Paul acted willfully in failing to file a tax return and in aiding his wife to evade paying taxes based on testimony from Paul's wife, the Pauls' accountants, and two agents of the Internal Revenue Service, Curtis Wolfe and Carol Dox.  Mrs. Paul and Agent Wolfe testified that Paul, who had served as the office manager for his wife's medical practice, changed the status of the practice in 2004 from an S corporation to a nonprofit organization, applied for the change of status, and listed himself as president of the nonprofit organization. Agent Wolfe testified that Paul, who was responsible in his role as president to file a Form 990 tax return yearly for the organization, failed to claim an exemption to that yearly requirement when he applied for nonprofit status.  And Agents Wolfe and Dox testified that Paul filed a Form 990 and reported income for the organization for tax years 2004 and 2005, but not 2006 or 2007.  Presented with these facts, the jury reasonably found that Paul knew to file a Form 990 for tax year 2007, but willfully failed to do so.  See 26 U.S.C. § 7203; see also Cheek, 498 U.S. at 202, 111 S. Ct. at 611 ("[O]ne cannot be aware that the law imposes a duty upon him and yet be ignorant of it, misunderstand the law, or believe that the duty does not exist.").

4

The evidence also supported the finding of the jury that Paul willfully aided his wife when she evaded paying taxes. See 26 U.S.C. § 7201. Mrs. Paul and Agent Wolfe testified that Paul arranged the financial affairs of the medical practice so Mrs. Paul could avoid reporting income. Mrs. Paul testified that she was obliged to pay taxes and complied with that duty before marrying Paul, but in tax years 2004 through 2007 she neglected her obligation at Paul's insistence that she treat her income from the medical practice as loans. As part of this scheme, Paul wrote "loan/draw" on the subject line of checks issued to Mrs. Paul and did not issue her a W-2 or Form 1099. During the investigation that ensued, Paul contended that he was not obliged to pay taxes and gave inconsistent statements to justify his position. Agent Wolfe testified about a meeting in 2009 with Paul during which he asserted that he had taken a vow of poverty and that his wife, the sole provider for the family, was simply not required to pay taxes. Agent Wolfe also testified about a meeting in 2010 with Paul and his wife during which they said they were excused from paying taxes because Mrs. Paul received loans from the medical practice. And Paul aided Mrs. Paul in withholding information from and understating her income in filings with the Revenue Service. In 2005, Mrs. Paul entered an agreement with her bank stating that her monthly income was $7,000, and a loan agreement purportedly entered by Mrs. Paul and her medical practice guaranteed her a salary of $400,000. Nonetheless, Mrs. Paul filed a

5

delinquent tax return for tax year 2006 provided by Paul that reported his wife's income as $2,589. Although Mrs. Paul testified that she received nontaxable income from the medical practice, the scheme and methods Paul used to conceal Mrs. Paul's income, and the substantial amount of that income reveals that Paul knew his wife was required to pay taxes, but he voluntarily and intentionally helped her evade that obligation. See id.; United States v. Daniels, 617 F.2d 146, 148–49 (5th Cir. 1980).

The district court did not clearly err by enhancing Paul's sentence for his use of sophisticated means. A defendant is subject to a two-level increase to his base offense level if he uses "especially complex or especially intricate . . . conduct [in] the execution or concealment of an offense." United States Sentencing Guidelines Manual § 2T1.1(b)(2) & cmt. n.4 (Nov. 2011). Paul converted his wife's medical practice to a nonprofit organization, classified payments from the practice as loans to avoid reporting income, and deposited that money in 35 bank accounts that he controlled on behalf of 13 shell businesses that he created within his nonprofit organization. Paul's tax avoidance scheme was sophisticated. See United States v. Campbell, 491 F.3d 1306, 1315–16 (11th Cir. 2007).

The district court also did not clearly err by enhancing Paul's sentence for obstruction of justice. The Sentencing Guidelines provide for a two-level enhancement of a sentence if a defendant "willfully obstructed or impeded, or

attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction" and his "obstructive conduct related to (A) [his] offense of conviction and any relevant conduct; or (B) a closely related offense." U.S.S.G. § 3C1.1. Paul obstructed justice by attempting to interfere when his codefendant, Mrs. Paul, and her counsel were involved in plea negotiations. See id. § 3C1.1 cmt. n.4(A), (D). Paul instructed Mrs. Paul's attorney not to contact her, and Paul forwarded emails between Mrs. Paul and her attorney to counsel for the government. And Mrs. Paul testified that Paul asked her not to plead guilty. Paul argues that "the impetus for [his] conduct was protection of his wife, not prevention of her guilty plea," but the district court was entitled to reach a contrary finding based on the extent of Paul's involvement in the fraud and his pending criminal charges. See United States v. Garcia, 13 F.3d 1464, 1471 (11th Cir. 1994).

The district court also did not abuse its discretion by varying upward from the advisory guidelines range and sentencing Paul to 53 months of imprisonment. Paul orchestrated a "loan scheme" to evade paying taxes on income from his wife's medical practice, failed to file tax returns to conceal that wrongdoing, and underreported income on delinquent tax returns filed after the Revenue Service discovered the fraud. Despite the substantial evidence of his guilt, Paul maintained at his sentencing hearing that he was innocent. And the district court was

7

concerned about Paul's ability to manipulate his wife and influence her to disregard her obligation to comply with the tax laws. The district court explained that it had varied upward 12 months from the high end of Paul's advisory sentencing range of 33 to 41 months on the grounds that the "guidelines underrepresent[ed] the conduct that [he] committed in this case" and that a sentence at the low end of the guidelines range would "not [be] sufficient" to address the statutory purposes of sentencing. The district court reasonably determined that a sentence of 53 months would best "reflect the seriousness of the offense, . . . promote respect for the law and . . . provide just punishment for the offense, . . . afford adequate deterrence to criminal conduct, and . . . protect the public from any further [similar] crimes." See 18 U.S.C. § 3553. Paul's sentence, which is well below the maximum statutory penalty of 21 years of imprisonment, is reasonable. See United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008).

We **AFFIRM** Paul's convictions and sentence.